423 F.2d 393
 James M. MORRISSEY, Joseph Padilla, Ralph Ibrahim, individually and on behalf of the members of the National Maritime Union of America, Plaintiffs-Appellees-Appellants,
v.
Joseph CURRAN, Shannon Wall, William Perry, Martin E. Segal, Abraham E. Freedman and Leon Karchmer, Defendants-Appellants-Appellees.
 Nos. 309-312.
 Docket 33884.
 Docket 33918.
 Docket 33919.
 Docket 33937.
 United States Court of Appeals, Second Circuit.
 Argued November 19, 1969.
 Decided February 20, 1970.
 Certiorari Denied June 29, 1970.
 
 See 90 S.Ct. 2245.
 Charles Sovel, New York City (Abraham E. Freedman, New York City, on the brief for defendants Joseph Curran, Shannon Wall and William Perry), for defendants-appellants Curran, Wall, Perry and Abraham E. Freedman.
 Roy L. Reardon, Simpson, Thacher & Bartlett, New York City, for defendants-appellants Martin E. Segal and Leon Karchmer.
 Arthur E. McInerney, New York City (Duer & Taylor, New York City, on the brief), for plaintiffs-appellees.
 Before LUMBARD, Chief Judge, and DANAHER* and ANDERSON, Circuit Judges.
 ANDERSON, Circuit Judge:
 
 
 1
 This case arises under § 501 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 501 (1964), and concerns the propriety of certain payments made into the Officers' Pension Fund of the National Maritime Union (NMU). The plaintiffs, James M. Morrissey, Joseph Padilla, and Ralph Ibrahim, have been members in good standing of the NMU since approximately 1950. The defendant Joseph Curran is the national president and the defendant Shannon Wall is the national secretary-treasurer of the NMU, both elective positions. The defendant William Perry is the recently retired assistant to the president of the Union, a non-elective position. The defendants Abraham E. Freedman, Martin E. Segal, and Leon Karchmer are the trustees of the NMU Officers' Pension Plan.
 
 
 2
 The structure of the NMU and the powers and duties of its officers and various internal governing bodies are set out in the Union's constitution. It makes provision for three governing units which have nation-wide jurisdiction. The ultimate authority is vested in the National Convention, which meets triennially and is composed of the elected delegates from various ships and ports. When the National Convention is not in session, the Union is governed by the National Council, which holds regular annual meetings and consists of the elected national officials and certain other delegated representatives. When the National Council is not in session, governing authority rests in the National Office, made up of the national president, secretary-treasurer, three vice presidents, and three national representatives. This body is primarily responsible for the day to day, internal administration of NMU affairs.
 
 
 3
 In 1951 the NMU constitution was amended to permit the National Council, subject to membership approval, to provide pension benefits for all NMU officers and employees.[1] On December 29, 1952, pursuant to this authority, the National Council entered into an Agreement and Declaration of Trust with three trustees which gave them the authority to establish a pension plan. On February 16, 1953, the trustees adopted a plan whereby pension rights accrued to the various elected officials of the Union, including the president, secretary, treasurer, vice-president, national port committee member, branch agent, field patrolman, and patrolman. No non-elected employee of the Union was included under its coverage. The majority of the administrative employees of the NMU were represented by this or other unions in their employment relationship with the NMU and had been granted pension rights, as permitted by the 1961 NMU constitution, as a part of their respective collective bargaining agreements.[2]
 
 
 4
 On October 28, 1961, the National Office (as opposed to the National Council) authorized an amendment to the Agreement and Declaration of Trust, the effect of which was to extend its coverage to certain executive and supervisory employees of the Union who held appointive rather than elective positions, such as the assistant to the president, organizer, executive secretary, publicity director, editor of the Pilot (the union house organ), and supervisors over maintenance, bookkeeping, records and supplies.[3]
 
 
 5
 Prior to the adoption of the amended Declaration of Trust, however, the NMU constitution had been subjected to an extensive revision whereby, along with other changes, the authority vested in the National Council to fix the salaries of certain employees was shifted to the National Office and the requirement for membership approval thereof was deleted.[4] This revision became effective on December 2, 1960.
 
 
 6
 The plaintiffs contend that the 1961 amendments to the Declaration of Trust, by the National Office, permitting benefits to be paid to non-elected employees under the Officers' Pension Plan were not authorized by and were in contravention of the NMU constitution, as amended in 1960. After Union officials refused to take any action, as requested, to obtain the return of funds paid into the Trust fund for the benefit of non-elected employees under the revised Plan, the plaintiffs filed a complaint in the district court seeking an accounting, a money judgment for any damages suffered by the Union or the Trust fund, and an injunction against further payments to non-elected employees.
 
 
 7
 On February 4, 1969, the district court (Bryan, Judge) granted leave, pursuant to 29 U.S.C. § 501(b), to commence this action. Defendants Curran, Wall and Perry moved to dismiss the complaint under Rule 12(b) (5), F.R.Civ.P., or in the alternative for summary judgment under Rule 56. The plaintiffs filed a cross-motion for summary judgment against all defendants. Oral argument was heard on both motions on March 26 (Bonsal, Judge), and on May 23 the defendants' motions were denied and plaintiffs' cross-motion was granted. 302 F.Supp. 32 (S.D.N.Y.1969). The court held that the defendants should account for and repay pension funds accrued and paid to non-elected Union employees, that the defendant trustees should be enjoined from paying out of the Officers' Pension Plan fund further benefits to non-officers and the plaintiffs should recover costs and attorneys' fees.
 
 
 8
 Immediately following the district court decision, the National Council of the Union convened and proposed amendments to the constitution which gave the National Office of the NMU the authority, which the trial court had found it did not have under the 1960 amended constitution, to designate certain non-elected employees to be eligible for benefits under the Officers' Pension Plan as well as the authority "to validate retroactively all pensions heretofore paid under the plan." The approval of these amendments was voted on June 24, 1969. The plaintiffs promptly moved to have the June 24th amendments declared invalid as exculpatory, and therefore void, under § 501(a)[5] and to enjoin any implementation of them. The relief sought was denied without prejudice on July 3, 1969. The defendants moved that the entire action be dismissed as moot on the ground that the new amendments removed any question of the power of the defendants to act as they did.
 
 
 9
 Meanwhile, on June 2, 1969, defendants Curran, Wall and Perry filed a motion for reargument of the May 23 decision. On June 6 the plaintiffs filed a motion to enjoin the defendants from being represented by counsel retained by the Union, to require defendants to pay their own counsel from funds not belonging to the Union, and to enjoin the implementation of the proposed amendments to the NMU constitution on the ground that they were exculpatory and therefore void under 29 U.S.C. § 501(a). On June 11 a motion for reargument was filed on behalf of defendants Segal and Karchmer. In separate orders entered on July 3, 1969, these motions were denied, except for the motion relating to representation of defendants by Union counsel, which was not ruled upon.
 
 
 10
 The defendants have appealed from the district court decision granting summary judgment to the plaintiffs, denying their own similar motion and their motions for reargument. The plaintiffs have filed an interlocutory appeal from the trial court's denial of their motion to declare invalid and enjoin the use of the June 24 amendments to the NMU constitution. The major dispute on these appeals concerns the proper interpretation of the provisions for establishing employee pension funds under the 1951 NMU constitution, as amended in 1960.
 
 
 11
 Defendants argue that the 1960 amendments were designed to shift the responsibility for the establishment of employee salaries from the National Council to the National Office and did not limit in any way the power of the National Office to establish employee pension funds. They assert that the term "salaries," as used in Article 8, § 11, must be construed to include pensions, from which they claim it follows that the National Office was acting within its authority when it amended the Officers' Pension Plan in 1961. In support of this position they rely upon such cases as Brumley v. Baxter, 225 N.C. 691, 36 S.E.2d 281, 162 A.L.R. 930 (1945), and Giannettino v. McGoldrick, 295 N.Y. 208, 66 N.E.2d 57 (1946), which hold that pensions are compensation for past services as opposed to gratuities, and in that sense, are included within the term "salary." But as the district court pointed out in its opinion, the framers of the NMU constitution, when drafting the 1960 revision, clearly had in mind a distinction between salaries and pensions, as evidenced by the use of the term "compensation" in Article 14 to include both types of remuneration. The NMU constitution, as amended in 1960, was clear and explicit with regard to the persons covered by the pension provisions, and in the light of the history, context and wording of those provisions, the district court's rejection of the defendants' claim is correct. There was no genuine issue of material fact concerning the charge of a breach of duty on the part of the defendants, and summary judgment in favor of the plaintiffs should be affirmed.
 
 
 12
 In support of their claim that the 1969 amendments[6] to the NMU constitution, made immediately following the district court decision, are exculpatory and that their application should be enjoined, the plaintiffs rely on Highway Truck Drivers and Helpers Local 107 v. Cohen, 182 F.Supp. 608 (E.D.Pa.), aff'd. 284 F.2d 162 (3 Cir. 1960), cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), and Highway Truck Drivers and Helpers Local 107 v. Cohen, 215 F.Supp. 938 (E.D.Pa.1963), aff'd, 334 F.2d 378 (3 Cir.), cert. denied, 379 U.S. 921, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964). In the first of these two cases the district court found that it was improper for the local union to pay the attorney fees of union officers who were under criminal indictment. These fees were to be paid pursuant to a resolution of the local which permitted such payment, and that resolution was declared invalid because it authorized "action beyond the powers of the union as derived from its constitution and was inconsistent with the aims and purposes of the Labor-Management Reporting and Disclosure Act." 284 F.2d at 164. The international union then amended its constitution to permit such authorizations. Thereafter in the second Cohen case the union officers claimed that the payments were valid as the amendment purported to be retroactive. In rejecting this claim the Third Circuit said:
 
 
 13
 "That abortive attempt to validate the illegal 1959 resolution, could not of course in 1961 legitimatize the 1959 payments which have been held to have been wrongful. And the action of the International was just as inconsistent with Section 501 of the Labor Management Act as was the Local's ill conceived resolution." 334 F.2d at 381.
 
 
 14
 The defendants in the present case, however, assert that the cases cited actually support the defense. It is their contention that the trial court held in the 1960 Cohen case that a resolution authorizing an expenditure of union funds was not an exculpatory provision in violation of § 501(a) and, in the 1963 Cohen case, that a constitutional amendment authorizing expenditures already incurred was not exculpatory unless the expenditures themselves were in violation of § 501 of the Act. Turning to the present case they argue that the court below did not find that the payments into the Officers' Pension Plan for the benefit of employees were per se violative of § 501(a), and therefore any subsequent constitutional provision purporting to validate the past payments cannot be exculpatory within the meaning of § 501 (a). In making this assertion, the defendants conveniently overlook the fact that the trial court did find that they had breached their duties because the expenditures in question were not authorized by the NMU constitution and that they were in violation of § 501 of the Act. In the Cohen cases the trial court was affirmed because the local union authorized actions beyond its powers as derived from the constitution and because its effort to pay attorneys' fees for officers who had been derelict in their duties was "inconsistent with the aims and purposes of the Labor Management Reporting and Disclosure Act." We agree with the position taken by the Third Circuit. Otherwise the provisions of § 501 would be completely emasculated if, every time a court, at the behest of complaining members of a union, found that the officers had breached their duties, the officers could find sanctuary by putting through a constitutional amendment or by-law retroactively to legitimatize their former derelictions of duty.
 
 
 15
 The defendants also argue that the district court "has not imposed any personal liability upon the defendants from which they needed to be "exculpated,'" but we do not agree with this argument. The district court ordered the defendants to account for all moneys paid into the Officers' Pension Plan and return to the NMU all moneys received by the trustees for the benefit of non-officers with interest. It follows that if they are unable to recoup that money, they may be held personally liable.
 
 
 16
 The trial court's decision, however, on the plaintiffs' motion for an injunction, that the purpose of the 1969 amendments to the NMU constitution was to include non-officer employees in the NMU officers' pension plan and that the amendments were, therefore, not exculpatory provisions prohibited by § 501, is at odds with its holding that there was an obvious breach of duty on the part of the defendants in causing union funds to be paid out to persons who were not entitled to them. His conclusions might have been correct if the provisions were prospective only in their application but the amendment to Article 14, § 7 provides in part: "the National Office shall have the authority to validate retroactively all pensions heretofore paid under the plan." This is clearly exculpatory in intent and language. The NMU exercised its authority under the 1969 amendments to attempt to validate retroactively all the pensions previously paid. The determination that the 1969 amendments were not exculpatory is reversed and will be reconsidered on remand.
 
 
 17
 The defendants raise a number of additional minor issues, several of which will be commented upon. They have throughout pressed the defense of laches. But the matter of improper payments of union funds to persons not entitled to them is a continuing offense and cannot bar an injunction to prevent continued payments or an accounting for all of the unlawful expenditures.
 
 
 18
 The defendants Segal and Karchmer claim that the ultimate order issued by Judge Bonsal exceeded the court's jurisdiction because it is their contention that the court's jurisdiction is fixed by the order issued by Judge Bryan on plaintiffs' application for leave to bring suit on February 4, 1969. This is an incorrect interpretation of § 501 (b). The purpose of requiring permission to bring an action is a safeguard to protect the union officers from vexatious suits and once given is not to be treated as a stricture on jurisdiction. Horner v. Ferron, 362 F.2d 224, 228 (9 Cir.), cert. den. 385 U.S. 958, 87 S.Ct. 397, 17 L.Ed.2d 305 (1966). An issue was also raised that Judge Bonsal had no power to grant summary judgment on plaintiffs' motion because of inadequacy of notice to some of the defendants. The trial court, however, had power on its own motion to enter summary judgment against the party who was the original mover. 6 Moore, Federal Practice, ¶ 56.12 at 2241 (2d ed. 1966). While some of the defendants had only a brief opportunity to prepare for the argument on the plaintiffs' motion, there is nothing whatever to indicate that any party was at all prejudiced. Stein v. Oshinsky, 348 F.2d 999, 1000-1001 (2 Cir.), cert. den. 382 U.S. 957, 86 S.Ct. 435, 15 L.Ed.2d 361 (1965).
 
 
 19
 Defendants also argue that the trustees of the Officers' Pension Plan do not come within the definition of those having a fiduciary responsibility as set forth in 29 U.S.C. § 402(q). This court has specifically rejected this claim in Tucker v. Shaw, 378 F.2d 304, 308 (2 Cir. 1967). The trial court was correct in finding that all of the defendants were in a position of trust and responsibility in relation to the monies charged to have been unlawfully expended and all had a duty to see that it was restored to the Union treasury.
 
 
 20
 The remaining points raised by the defendants do not merit discussion.
 
 
 21
 We affirm denial of the defendants' motion for summary judgment and the entry of summary judgment in favor of the plaintiffs. As the June 24, 1969, amendments to the NMU constitution are clearly exculpatory as prohibited by § 501(a), we reverse the denial of plaintiffs' motion to have these amendments declared void, and remand to the district court for appropriate action declaring the amendments to be without effect and enjoining defendants from acting in reliance upon them. As the district court apparently did not pass on so much of plaintiffs' motion as requested that defendants be enjoined from retaining counsel paid or to be paid with Union funds, this question should also be determined on remand. The controlling cases on this point are Tucker v. Shaw, supra, and Holdeman v. Sheldon, 311 F.2d 2 (2 Cir. 1962), in which we held that all that is necessary for enjoining of the defendants in a § 501 action is that the plaintiff make "a reasonable showing that he is likely to succeed." We also note that the district court maintains continuing jurisdiction to insure that the accounting and return of funds to the Union treasury proceed as ordered, and, of course, it retains the power to issue the necessary orders to assure full compliance.
 
 
 22
 Affirmed in part, reversed in part, and remanded for further proceedings in compliance with this opinion.
 
 
 
 Notes:
 
 
 *
 John A. Danaher, Senior Circuit Judge of the District of Columbia Circuit, sitting by designation
 
 
 [1]
 The pertinent provisions of the 1951 NMU constitution read as follows:
 "Article 15 Salaries of Officers
 Section 1 — Salaries and Expenses: The National Council, considering the financial state of the Union, is empowered, subject to approval of the membership, to set from time to time the actual salaries and daily expenses of all Union officers and employees.
 The National Council shall pay all salaries, approved by the membership, of all Union officers and employees. * * *
 * * * * *
 Sec. 8 — Pension and Welfare: The National Council, subject to approval of the membership is empowered to make adequate and appropriate provisions for pensions, welfare, and similar benefits for officers and employees of the Union."
 Between the 1951 amendment to the constitution and 1960 pension plans were adopted for the employees pursuant to collective bargaining agreements.
 
 
 [2]
 The last sentence of Article 8(a) of the 1960 constitution which concerns technical, clerical and administrative personnel attached to or under the National Office, provides:
 "Wherever possible, such employees shall be members of the NMU or of appropriate AFL-CIO affiliates."
 With nothing shown to the contrary, it may be assumed that all of the few non-elected employees, arbitrarily brought under the Officers' Pension Plan by the National Office, already had pension coverage under collective bargaining agreements applicable to them. It must be emphasized that the present case has nothing whatever to do with such pension coverage, nor do the plaintiffs in any way challenge or seek to disturb those pension rights of the administrative employees. Rather, in the present action, they are questioning only the awards to the special few non-elected employees who have been granted the lucrative "pension rights" under the Officers' Pension Plan. For example, one of these special employees, the defendant Perry, who incidentally already had coverage under the NMU Deep Sea Pension Plan, resigned as assistant to the president, January 16, 1969, and, as a specially created beneficiary received over $100,000 under the Officers' Pension Plan alone.
 
 
 [3]
 Three years later, in 1964, the Officers' Pension Plan was again extended to include additional administrative personnel not covered by collective bargaining agreements
 
 
 [4]
 The amendments applicable to this case read, in pertinent part, as follows:
 "Article 8 National Office
 * * * * *
 Sec. 11 — Employees of the Union: (a) The National Office shall be responsible for and shall fix the salaries of all technical, clerical, and administrative personnel as may be required for the effective administration of the Union's affairs. Wherever possible, such employees shall be members of the NMU or of appropriate AFL-CIO affiliates.
 (b) Collective bargaining agreements affecting employees of the NMU shall be negotiated by the National Office or such officer or officers as it may designate; provided that no such agreements shall be made without specific approval by the National Office."
 "Article 14 Compensation of Officers
 Section 1 — Salaries: (a) The National Council shall fix the salaries for all officers of the Union, subject to approval as provided by this Constitution.
 * * * * *
 Sec. 7 — Pensions: All officers shall be eligible for benefits under the NMU Officers' Pension Plan, subject to such rules and regulations as the Trustees of that Plan may establish.
 Sec. 8 — Welfare: All officers shall be eligible for benefits under the Officers' Welfare Plan. The National Council, subject to membership approval, is empowered to improve the benefits under said Plan."
 
 
 [5]
 The pertinent language of the statute provides:
 "* * * A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy."
 
 
 [6]
 The following is the full text of those amendments:
 "Amend Article 8, Section 11 to add the following paragraph:
 The National Office shall have the authority to provide pensions for all past and present employees of the Union and to protect the pension rights of all past and present employees of the Union.
 Amend Article 14, Section 7, as follows:
 Sec. 7 — Pensions: All officers and such employees as the National Office may designate, shall be eligible for benefits under the NMU Officers' Pension Plan, subject to such rules and regulations as the Trustees of that Plan may establish. The National Office shall have the authority to validate retroactively all pensions heretofore paid under the Plan."
 
 
 DANAHER, Senior Circuit Judge (dissenting):
 
 23
 Although according great respect for the views of my colleagues and for those of the able District Judge, Honorable Dudley B. Bonsal, I nonetheless fear that error has occurred.
 
 
 24
 The National Maritime Union of America (hereinafter NMU) was founded in 1937. Some fourteen years later, the still-young Union adopted a Constitution which, so far as is here pertinent, provided that "considering the financial state of the Union," the Union's National Council[1] was empowered to make adequate and appropriate provisions for pensions, welfare and similar benefits for officers and employees of the Union. That power was never rescinded, I suggest, but was later transferred to the National Office.
 
 
 25
 Agreeably to such authorization, effective as of February, 1953, the NMU Officers' Pension Plan was adopted, then covering all elected offices of NMU. There has been no challenge here to the validity of that Plan.
 
 
 26
 NMU in the management of its properties, in the administration of its far-flung business and in furtherance of its purposes, utilized the services of a staff of lawyers, economists, pension administrators, staff experts in Washington, doctors, and supervisory staffs of Union-owned real estate.[2] For their protection as well as to further its own interest in their retention in its service, NMU negotiated with various unions of which its employees were members for the establishment of pension and welfare plans. As an employer, NMU was bound to bargain respecting hours, wages and conditions of employment. Although clearly authorized to do so, NMU had not until the events here at issue, set up a separate plan for a few of its supervisory personnel, not elected officers and not represented by some union.
 
 
 27
 Some sixteen years after the original Plan had become effective, the plaintiffs here alleged that without authorization a lump-sum benefit[3] had been accorded to the defendant Perry following his resignation as Executive Assistant to the National President. Purporting to base the action upon 29 U.S.C. § 501, the plaintiffs had sought an accounting, a money judgment against the defendants, and an injunction to restrain the Trustees from paying benefits to Perry or any other non-elected employees of NMU. The Union was not made a party. Under date of May 23, 1969, the District Judge filed an Opinion holding, compendiously, that there was no authority[4] for covering non-employees into the Plan, and so he granted summary judgment for the plaintiffs. He ordered the defendants to account; enjoined the Trustees from paying benefits under the Plan to non-officers; and further directed the Trustees to return to NMU, with interest, all moneys received by the Trustees for the benefit of non-officers.
 
 I.
 
 28
 Meanwhile, Congress adopted the "Welfare and Pension Plans Disclosure Act," effective as of January 1, 1959,[5] which defined an "employee pension benefit plan" to mean
 
 
 29
 "any plan, fund or program which is communicated or its benefits described in writing to the employees, and which was heretofore or is hereafter established by an employer or by an employee organization, or by both, for the purpose or providing for its participants * * * retirement benefits * * *."
 
 
 30
 And the Act further defined the term "participant" to mean
 
 
 31
 "any employee or former employee of an employer or any member of an employee organization who is or may become eligible to receive a benefit of any type from an employee welfare or pension benefit plan, * * *."
 
 
 32
 NMU became bound to submit annually to the Secretary of Labor a report describing the Plan, an annual financial statement, and further information in such form and detail as the Secretary might prescribe. NMU complied with those requirements.[6]
 
 
 33
 So it was in part, and with the Labor Management Reporting and Disclosure Act of 1959 (LMRDA)[7] by this time on the statute books, the 1951 Constitution was revised at an NMU Convention held in October, 1960, with ratification by the membership after a referendum vote concluded in December of 1960.
 
 
 34
 I deem it unthinkable that the NMU membership supposed for a moment that the amended Constitution was intended to wipe out whatever rights to coverage had been acquired since 1952. There was no repealer clause in the 1960 revision. To me, it is inconceivable that the eligibility established in 1952, followed by good faith reliance under the express terms of the earlier Constitution, was to be deemed obliterated. I reject the suggestion that the Constitution, as revised, had narrowed the authority of this Union to provide pensions for any of its 47,000 members, whether they be elected officers or employees or whatever their status.
 
 
 35
 On the contrary the 1960 Constitution even broadened benefits to be accorded to members whose rights had previously accrued, as for example where Article 15, Section 8(f), specified that members
 
 
 36
 "receiving a monthly pension under the NMU Welfare and Pension Plan or the NMU Officers' Pension Plan shall not be required to pay dues and shall be regarded as honorary members. * * *"
 
 
 37
 Against such background, lacking representation by any employee union and not possessing the status of elected officers, a few non-elected employees were brought into the Plan. Perry as Assistant to the President[8] was included, certain others being identified as Organizer, Maintenance Supervisor, Bookkeeper Supervisor, Records and Supply Supervisors, Executive Secretary, Publicity Director and the Editor of the NMU official News Organ, The Pilot.
 
 
 38
 In sum, my reading of the record and my construction of the NMU Constitution convince me, first, that it had always been the plain intendment of this Union that pensions for both officers and employees be authorized; and next, that the power to establish any plans had been created in 1951, with continuing authorization to amend whatever plan might thereafter be established. See, for example, Article 15, Section 8 of the Constitution, ratified in 1951, which read:
 
 
 39
 The National Council, subject to approval of the membership, is empowered to make adequate and appropriate provisions for pensions, welfare, and similar benefits for officers and employees of the Union.
 
 
 40
 Nothing to be discerned from the revised Constitution, ratified December 2, 1960, detracted one whit from that authority. Rather, I suggest, the later revision must be read with the former. The only difference in giving effect to the continuing intent of the Union membership was that after the 1960 revision, the authority to act was transferred from the National Council to the National Office. I conclude that even without more than my analysis suggests, the District Judge erred in concluding that at the time the challenged action was taken, there had been a lack of authority to provide pensions for all past and present employees of the Union.
 
 II.
 
 41
 But there was more. After the release of Judge Bonsal's May 23, 1969 Opinion, the Union promptly took steps to reiterate the NMU intention. If the judge could be heard to say that NMU had failed to make clear its intention, two amendments to the Constitution were immediately proposed. The amendments by the membership by an overwhelming vote. Accordingly, the revised 1960 Constitution was further amended by the addition to Article 8, Section 11, of the following:
 
 
 42
 (d) — The National Office shall have the authority to provide pensions for all past and present employees of the Union and to protect the pension rights of all past and present employees of the Union.
 
 
 43
 The membership further amended Article 14, Section 7, to read as follows:
 
 
 44
 Pensions: All officers and such employees as the National Office may designate shall be eligible for benefits under the NMU Officers' Pension Plan, subject to such rules and regulations as the Trustees of that Plan may establish. The National Office shall have the authority to validate retroactively all pensions heretofore paid under the Plan.
 
 
 45
 These plaintiffs then attacked the amendments as "exculpatory" within the meaning of 29 U.S.C. § 501, and they sought an injunction. The District Judge flatly — and correctly — rejected that contention and ruled that the amendments "were not exculpatory provisions prohibited by 29 U.S.C. § 501. Their purpose is obviously to include non-officer employees in the NMU Officers' Plan."[9] (Emphasis added.)
 
 
 46
 Granting that the Constitution had validly been amended, the District Judge's July 3, 1969 Memorandum observed, "It does not appear that the National Office has exercised this authority."
 
 
 47
 I read him to be saying, "I do not perceive that the necessary authority existed to include non-officers at the time they were covered into the Plan. But now NMU has conferred that authority. Even so as of this moment, the National Office has not so far exercised its power." And accordingly he concluded only that since the inclusion of non-officers "was beyond the power of the defendants, plaintiffs are entitled to appropriate relief."[10]
 
 
 48
 Thereupon after such prompting, as the record shows, the National Office acted to implement the authority so recently reaffirmed. It adopted a resolution based upon the desire of the National Office "to confirm the pension rights of all employees of the Union, both retroactively and prospectively." The text appears in the margin.[11]
 
 
 49
 Right then and there, having been advised in the premises, the assumed omission having been cured by NMU, the District Judge should have entered summary judgment in behalf of the defendants, thus rendering moot whatever claims had previously been urged upon the Court by these plaintiffs. To take any other view, as it seems to me, is not only to deny NMU its right to manage its own affairs,[12] but in view of the rectification of whatever oversight the Judge thought he had detected, the membership clearly restated its approval of the authority of the National Office and of the Trustees to provide pensions for all officers and all employees.[13]
 
 
 50
 The purpose and the intent of the Union emerged conclusively, I respectfully submit, and the conferred authority was exercised.
 
 III.
 
 51
 Having in mind that the District Judge concluded that summary judgment was in order, perhaps it will not be amiss to turn back to his May 23, 1969 Memorandum Decision. There he concluded that the "plaintiffs' action for breach of defendants' fiduciary duties is not barred by laches." He continued that "in this case defendants have made no showing that they have been prejudiced by the delay."
 
 
 52
 Judge Motley found in Wirtz v. National Maritime Union of America, 284 F.Supp. 47, 53 (1968), that the defendant Wall in the 1966 contest for National Secretary-Treasurer had defeated the plaintiff Morrissey by a vote on the order of two to one. The plaintiff Padilla received the least number of votes and by about the same ratio as he sought election as one of the Vice-Presidents. These plaintiffs then had filed protests, id., 57, in accordance with the provision of the Constitution, and after their protests had been heard and rejected they sought the intervention of the Secretary of Labor. They did not do so here, and it may be noticed that the Secretary is not complaining concerning the present issue,[14] although he had been kept informed through the annual filing of the reports required by the Disclosure Acts.
 
 
 53
 Now, some eight years after the actions we have been discussing, we find these plaintiffs seeking an accounting and a return of moneys contributed to the Pension Plan. If as the plaintiffs contend on brief these defendants under the judgment will be bound individually to return to NMU all moneys theretofore paid or accrued for the benefit of the intended participants, it is difficult to see why the defendants shall not "have been prejudiced by the delay." Surely if this action had earlier been commenced and concluded with like result, it would seem inevitable that liability so entailed would have been limited. Moreover, corrective action, if really required, could at once have been taken to the end that the Union's concern for eligible participants be satisfied.
 
 
 54
 It seems to me that a hearing, at least on this aspect of the case, was clearly in order. I fail to see how the Judge could have faulted the defendants as having "made no showing that they have been prejudiced by the delay." To what extent that conclusion of the District Judge entered into his determination that summary judgment was in order, we do not know. But we do know that despite the absence of extrinsic evidence both on this point and with respect to what was in fact the intention of the Union, summary judgment for the plaintiffs was directed.[15] If summary judgment were not to be entered in favor of the defendants for the reasons previously advanced, at the very least according to my appraisal of the record here there should have been a hearing. There was error on account of that failure if for no other reason.
 
 IV.
 
 55
 It would unduly protract this exposition of my views were I to go into further detail. Sounding again the note on which I opened, I respectfully submit my observations with the greatest regard for those of my colleagues and Judge Bonsal.
 
 
 
 Notes:
 
 
 [1]
 The National Council was authorized to act between National Conventions. Another entity, known as the National Office, was accorded the same powers as those reposed in the National Council, to be exercised in the more frequent meetings of the National Office
 
 
 [2]
 Some inkling of the nation-wide scope of the operations of NMU may be gleaned from the carefully-detailed findings of District Judge Motley outlined in Wirtz v. National Maritime Union of America, 284 F.Supp. 47 (S.D.N.Y.1968); affirmed by this Court 399 F.2d 544 (1968)
 
 
 [3]
 The original Plan had specifically provided that the Trustees in their discretion might make a lump-sum payment in lieu of benefits otherwise provided. Indeed, the authorization was amended and extended in 1958
 
 
 [4]
 There was no evidence that the officer defendants or the Trustees personally benefited in any way or otherwise acted unlawfully, or that they had exercised bad faith. Cf. Bakery and Confectionery Workers Internat'l U. v. Ratner, 118 U.S.App.D.C. 269, 335 F.2d 691 (1964)
 
 
 [5]
 29 U.S.C.A. § 301 et seq., PL 85-836, as amended by PL 87-420, 76 Stat. 35, which vastly increased the authority of the Secretary of Labor to supervise and to administer the disclosure requirements of the earlier Act
 
 
 [6]
 29 U.S.C.A. §§ 304-307. NMU furthermore was bound to report in detail to the Bureau of Internal Revenue and annually did so
 
 
 [7]
 29 U.S.C.A. § 401 et seq
 
 
 [8]
 The Constitution in Article 13, Section 1, provided as to the National President that:
 (f) He may, in his discretion, and at such salary as the National Office may determine, appoint a member, or members, of the Union to assist him in the exercise of his administrative functions; provided that such assistant or assistants shall at no time act in an executive capacity.
 
 
 [9]
 Decision and Order on Motion for an Injunction
 The amendments to the NMU Constitution are not exculpatory provisions prohibited by 29 U.S.C. 501. Their purpose is obviously to include non-officer employees in the NMU Officers' Pension Plan. According to the Certification of the Honest Ballot Association, dated June 24, 1969, the following amendments were adopted by a vote of 10,043 to 1,685:
 "Add the following paragraph to Article 8, Section 11:
 (d) — The National Office shall have the authority to provide pensions for all past and present employees of the Union and to protect the pension rights of all past and present employees of the Union.
 "Amend Article 14, Section 7 to read as follows:
 Pensions: All officers and such employees as the National Office may designate shall be eligible for benefits under the NMU Officers' Pension Plan, subject to such rules and regulations as the Trustees of that Plan may establish. The National Office shall have the authority to validate retroactively all pensions heretofore paid under the Plan."
 While it is stated that 12,040 members obtained a ballot, it is not stated how many members of NMU were eligible to vote. The amendment to Article 14, Section 7 provides that "the National Office shall have the authority to validate retroactively all pensions heretofore paid under the Plan." However, it does not appear that the National Office has exercised this authority.
 Plaintiffs' motion is denied, without prejudice to the plaintiffs seeking further relief by appropriate application if the defendants should violate the order of the court.
 It is so ordered.
 Dated: New York, N. Y.
 July 3, 1969.
 Dudley B. Bonsal
 U.S.D.J.
 
 
 [10]
 Decision and Order on Motion for Reargument
 Defendants' motion for reargument is denied. The interpretation of the meaning of "salaries" sought by defendants would not change the holding that only officers were eligible for benefits under the NMU Officers' Pension Plan, for the reasons stated in the Memorandum filed May 23, 1969. Therefore the inclusion of non-officers in the Plan was not authorized by the NMU Constitution as revised in 1960. Since such inclusion was beyond the power of the defendants, plaintiffs are entitled to appropriate relief.
 Consideration has been given to the affidavit of the defendant Martin Segal dated June 11, 1969, which was filed in support of the defendants' motion for reargument. Mr. Segal is one of the trustees of the NMU Officers' Pension Plan, who appeared in the action and filed his answer on May 1, 1969. The court does not question Mr. Segal's good faith as trustee. However, the plaintiffs are entitled to obtain the return to NMU of the monies paid to the Fund on behalf of non-officers since their inclusion was not authorized.
 It is so ordered.
 Dated: New York, N. Y.
 July 3, 1969.
 Dudley B. Bonsal
 U.S.D.J.
 
 
 [11]
 "Now, Therefore be it Resolved:
 (1) All pensions heretofore paid by the NMU Officers' Pension Plan are hereby validated and approved.
 (2) All employees of the Union except (a) those already covered by collective bargaining agreements where the NMU is the employer, which collective bargaining agreements provide for the covered employees * * * shall be eligible for benefits under the NMU Officers' Pension Plan.
 (3) Payments on the NMU Officers' Pension Plan to provide for the foregoing benefits are hereby authorized and all past payments by the Union to the NMU Officers' Pension Plan are hereby ratified and approved."
 Pursuant thereto, the Plan (identified as that which was "effective as of February 16, 1953," as amended) was again amended in Article I, Section 8 to define, more specifically, the term "Participant" to mean
 "an Officer, Representative, Supervisor or Professional, and all other employees of the Union except (a) any employee whose compensation, hours of work or conditions of employment are determined by collective bargaining with a recognized bargaining agent. * *"
 And Section 9 defines "NMU Constitution" to mean
 "the Constitution of the NMU in force and effect at the time of the adoption of this Pension Plan [1953] together with any amendments thereto."
 
 
 [12]
 The Supreme Court has recognized that unions in the view of Congress are to be accorded great latitude in resolving their own internal controversies. Wirtz v. Local 153, Glass Bottle Blowers Ass'n., 389 U.S. 463, 471, text, n. 10, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968); cf. Wirtz v. Hotel, Motel and Club Employees, 391 U.S. 492, 497, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968)
 
 
 [13]
 Applying to the documents before us principles analogous to those governing statutory construction, we are bound to read them together. Certainly repeals by implication are not favored, and nowhere can it be seen that the 1960 Constitution repealed the earlier version. Where there are two acts upon the same subject, it is fundamental that the rule is to give effect to both if possible. United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939)
 The language before us must be interpreted in the light of reason and understanding to reach the results intended by the NMU's Conventions and the respective Constitutions which reflect the membership approval. Rathbun v. United States, 355 U.S. 107, 109, 78 S.Ct. 161, 2 L.Ed.2d 134 (1957); cf. United States v. Public Utilities Comm'n, 345 U.S. 295, 315, 73 S.Ct. 706, 97 L.Ed. 1020 (1953).
 If caution "against a literal reading of congressional legislation" be required, Wirtz v. Bottle Blowers Ass'n., supra, at 468, 88 S.Ct. 643, how much more so should that caution be applied to the language, often enough inartful, as employed by the Union's draftsmen. Recognition of the general objectives sought to be achieved by NMU should provide the key to a reconciliation of all alleged doubts.
 This was no case where officers of the Union were misappropriating Union funds for themselves. Cf. Tucker v. Shaw, 378 F.2d 304, 306 (2 Cir. 1967); indeed, the Judge found no lack of good faith on the part of the trustees, cf. Coleman v. Brotherhood of Railway & Steamship Clerks, Etc., 340 F.2d 206, 209, 15 A.L. R.3d 933 (2 Cir. 1965). Here, the Union officers, the National Office, the NMU membership and the trustees had undertaken to do precisely what the Union sought to accomplish.
 
 
 [14]
 In passing it should be noted that the Internal Revenue Service had required NMU to amend the Plan so as to cover broadlyall employees, officers, as well as non-officers. Thereupon, the Plan, so amended, was approved by the Bureau of Internal Revenue.
 
 
 [15]
 Cf. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)