James DENZER, Plaintiff,

v.

**PUROFIED DOWN PRODUCTS CORP. PROFIT–SHARING AND RETIRE-MENT PLAN et al., Defendants.**

No. 79 Civ. 223.

United States District Court, S. D. New York.

July 18, 1979.

John J. Meglio, New York City, for plaintiff.

Daniel Schiffman, New York City, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

The plaintiff, James Denzer, brought this action under the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") to recover pension benefits. The defendants, Purofied Down Corp. ("Purofied"), the Purofied Down Corp. Profit-Sharing and Retirement Plan (the "Plan") and Bankers Trust Co. (the "Trustee"), move under Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. The defendants' motion is supported in part by matters outside the pleadings; thus we must treat it as a motion for summary judgment. Fed.R.Civ.P. 12(b). Under such a motion, we have the power to grant summary judgment for a non-moving party. *Morrissey v. Curran* (2d Cir.) 423 F.2d 393, 399, *cert. denied*, (1970) 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56.

We deny defendants' motion. In addition, we find that the plaintiff is entitled to summary judgment in his favor. We will enter a judgment for the plaintiff unless within twenty days the defendants submit papers persuading us that such action would be unwarranted or inappropriate.

Unless otherwise indicated, the following material facts are undisputed: In 1962, the plaintiff began working for Purofied. One of the benefits which accrued to the plaintiff upon entering Purofied's employ was membership in the Plan. Article VII, § 1(1) of the Plan provided that:

> "In the event of a discharge or resignation, without cause . . . , prior to retirement, of a member who has been continuously a member for a period of

four or more years [1] such member shall be entitled to a severance benefit . . . The severance benefit of a discharged . . . member shall be a percentage of the amount standing to the credit of such member in his account on the effective date of such discharge or resignation as determined below: . . . Ten or more years of membership in the Plan—100%."

Article IV, § 1(a) of the Plan provided that "[n]o amendment shall operate to deprive a Member of any rights or benefits vested in him under the Plan prior to such amendment."

On January 13, 1978, the plaintiff's employment with Purofied was terminated without cause. At that time the plaintiff was forty-three years of age and had accumulated $18,957 in benefits under the Plan. After leaving Purofied, the plaintiff demanded immediate payment of these benefits under Art. VIII, § 1(1) of the Plan.

Purofied refused to pay, contending that an amended Plan had recently been adopted which allowed Purofied to delay payment of the plaintiff's benefits until he reached the age of sixty-five. The amended Plan had been adopted on July 13, 1978, with a provision that it would be retroactively effective as of September 1, 1976. Section 8.1(a) of the amended Plan provided that:

"(A) Distribution to a Participant of the nonforfeitable portion of his Account shall commence not later than the sixtieth (60th) day after the close of the Plan Year in which the later of the following events occur:

(1) the Participant's Normal Retirement Date, or

(2) the termination of the Participant's employment with all Controlled Companies."

Section 1.23 of the amended Plan defined "Normal Retirement Date" as "the later of (A) the 65th anniversary of the Participant's birth; or (B) the tenth anniversary of participation under the Plan or, if earlier, under the Prior Plan . . . .."

1. The qualifying period for these benefits was reduced from four years to two years in 1965. Since the plaintiff was a Plan member for more

Having failed to obtain benefits upon demand, the plaintiff brought this action under ERISA, 29 U.S.C. § 1132(a)(1)(B), to obtain immediate payment of benefits. In this action, the plaintiff claims benefits under three theories. First, he contends that he is entitled to benefits under the terms of ERISA. Second, he argues that benefits were awarded to other similarly situated Plan members, and that the Trustee acted arbitrarily and capriciously in denying his claim for immediate benefits. Third, the plaintiff argues that the amended Plan cannot be applied retroactively to deprive him of a right which vested in him under the old Plan, i. e., the right to receive benefits upon termination of employment without cause.

■ The plaintiff's first argument is based upon a novel reading of § 206(a) of ERISA, 29 U.S.C. § 1056(a). That section provides in pertinent part:

"(a) Each pension plan shall provide that unless the participant otherwise elects, the payment of benefits under the plan to the participant shall begin not later than the 60th day after the latest of the close of the plan year in which—

(1) the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,

(2) occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or

(3) the participant terminates his service with the employer."

The plaintiff contends that the word "latest" means the "most recent" of the events specified in the three subsequent subsections. We cannot accept this interpretation. As Judge MacMahon has recently observed, "Congress never intended to impose upon a plan a requirement that any benefits be payable before age sixty-five." *Riley v. MEBA Pension Trust* (S.D.N.Y.) 452 F.Supp. 117, 120, *aff'd on other grounds*, (2d Cir. 1978) 586 F.2d 968.

than ten years, the change is immaterial to this case.

■ Relief, however, could be granted on the plaintiff's claim that the Trustee's action was arbitrary and capricious. The court in *Riley v. MEBA Pension Trust* (2d Cir. 1977) 570 F.2d 406, held that the pre-emptive provisions of ERISA, 29 U.S.C. § 1144(a), required the application of "new federal standards of fairness . . . with respect to charges of breach of fiduciary duty not explicitly covered by Part 4 of ERISA . . . ," such as the plaintiff's charge that the Trustee acted arbitrarily and capriciously. *Id.*, 413. Nevertheless, the court held that "we know of no federal standard that would here be applicable other than the arbitrary or capricious one." *Id. See also, Bueneman v. Central States, Southeast and Southwest Pension Fund* (8th Cir. 1978) 572 F.2d 1208. Thus we hold that the plaintiff's second argument is within the scope of the court's power to review a pension trustee's actions.

The defendants, however, contend that as a factual matter they did not act arbitrarily or capriciously. They have submitted affidavits and copies of their payment records in support of their assertion that no benefits have been paid to Plan members under sixty-five years of age since the adoption of the amended Plan on July 13, 1978. Thus the defendants argue that all Plan members who are similarly situated to the plaintiff have been treated equally. The plaintiff has not denied the defendants' factual assertion. However, since we find that the plaintiff is entitled to judgment as a matter of law on his third argument, we need not decide the question of whether the defendants' affidavits and records establish that they did not act arbitrarily or capriciously.

■ Plaintiff's third argument relies solely on the terms of the Plan as they

existed at the time he left Purofied on January 13, 1978. At that time Art. VIII, § 1(1) provided that a Purofied employee who was a Plan member for more than ten years and was discharged from Purofied without cause was entitled to immediate payment of his pension benefits. That section also established the time at which the right to immediate payment of benefits vested in the plaintiff. The most reasonable interpretation of that section is that the plaintiff's right to immediate payment vested when he left Purofied on January 13, 1978, i. e., after the retroactive effective date of the amended Plan but before the amended Plan had been adopted.[2]

■ The retroactivity of the amended Plan cannot affect the plaintiff's vested rights under the original Plan. That Plan was an offer of a unilateral contract by Purofied to the plaintiff. "Upon performance of all conditions of the offer the . . . [plaintiff's] . . . right to pension benefits vest[ed] and there . . . [was] . . . a binding unilateral contract." *Hardy v. H. K. Porter Co., Inc.* (E.D.Pa. 1976) 417 F.Supp. 1175, 1183 (citing *Hurd v. Illinois Bell Telephone Co.* (7th Cir. 1956) 234 F.2d 942). The rights which vested in plaintiff upon his acceptance of Purofied's conditional offer to a unilateral contract "may not be altered without the . . . [plaintiff's] . . . consent." *Allied Chemical & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.* (1971) 404 U.S. 157, 181, 92 S.Ct. 383, 399, 30 L.Ed.2d 341 n. 20. Thus alteration of the plaintiff's vested rights by retroactive amendment, without the plaintiff's consent, is ineffective. *Sparta v. Lawrence Warehouse Co.* (3d Cir. 1966) 368 F.2d 227.[3]

---

**2.** The Plan also might be interpreted as vesting a right of immediate payment in the plaintiff upon his completion of ten years of Plan membership. Under this interpretation, the plaintiff's right would have vested in 1972, i. e., before the retroactive effective date of the amended Plan. Since summary judgment for the plaintiff is warranted even if the plaintiff's right vested after the retroactive effective date of the amended Plan, such judgment would *a fortiori* be warranted under this interpretation of the Plan.

**3.** For other cases discussing the alteration of pension rights, see, *Rochester Corp. v. Rochester* (4th Cir. 1971) 450 F.2d 118; *McCoy v. Mesta Machine Co.* (E.D.Pa.1978) [1978] Pens. Rep. (BNA) No. 213, D–1, withdrawn, (March 9, 1979) No. 77–1046; *Hurd v. Hutnik* (D.N.J. 1976) 419 F.Supp. 630; *Genevesse v. Martin-Marietta Corp.* (D.Pa.1969) 312 F.Supp. 1186.

The terms of the Plan, as it existed when plaintiff's employment was terminated, vested in the plaintiff a right to immediate benefits, and the plaintiff is entitled to judgment in his favor.

We are, however, not inclined to enter such a judgment at this time. The parties have not fully briefed the issues we find controlling, i. e., the construction of Art. VIII, § 1(1) of the Plan and the retroactivity of the amended Plan, and it may be that we can be shown to have overlooked some material consideration. We shall therefore delay the entry of judgment for twenty days, within which time the defendants may submit any papers to persuade us of any error in our reasoning.[4]

In conclusion, we deny the defendants' motion to dismiss and shall enter summary judgment for the plaintiff at the expiration of twenty days unless defendants otherwise persuade us.

SO ORDERED.

---

**4.** Before this opinion was announced, the defendant had unconditionally tendered to plaintiff the full amount claimed. Plaintiff, however, refused the tender unless defendant would also agree to pay counsel fees. Plaintiff subsequently accepted the tender upon defendant's agreement to litigate his entitlement to such fees. That dispute has since been settled, and plaintiff's complaint has been dismissed with prejudice.