UNITED STATES of America, Plaintiff,

v.

DESIREE INTERNATIONAL U. S. A., LTD., and St. Paul Fire & Marine Insurance Co., Defendants.

No. 79 Civ. 2646 (RLC).

United States District Court, S. D. New York.

July 31, 1980.

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for plaintiff; Janis P. Farrell, Asst. U. S. Atty., New York City, Harvey Barrison, Staff Atty., U. S. Customs Service, of counsel.

Hart & Hume, New York City, for defendant St. Paul Fire and Marine Ins. Co.; Paul E. Dahlman, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

This is an action by the United States to recover liquidated customs duties from an importer of foreign goods, Desiree International U.S.A., Ltd. ("Desiree"), and its sure-

ty, St. Paul Fire & Marine Insurance Company ("St. Paul"). The government, arguing that defendants' obligation to pay the duties in question has become final under section 514 of the Tariff Act of 1930, as amended ("Act"), 19 U.S.C. § 1514, has moved for summary judgment pursuant to Rule 56, F.R.Civ.P. For the reasons given below, the motion is denied, summary judgment is ordered in defendants' favor, and the complaint is dismissed.

*Factual and Statutory Background*

There is no dispute as to the facts underlying this lawsuit. In January, 1972, Desiree imported certain goods into the United States, initiating the chain of events culminating in this lawsuit. Pursuant to 19 U.S.C. § 1623 and 19 C.F.R. § 113, Desiree had filed a bond with the U.S. Customs Service ("Customs"), with St. Paul as its surety, to insure payment of all duties it incurred during the period relevant to this lawsuit. By virtue of this bond, the goods in question were released to Desiree upon its payment of estimated duties of $8,875. *See* 19 C.F.R. § 141.

Subsequently, on November 30, 1973, Customs liquidated[1] the entry pertaining to Desiree's goods, and determined that $33,-150.38 in additional duties was owed. It is that sum, less a set-off of $7,714.03 resulting from refunds due Desiree on an unrelated transaction, that the government seeks to recover by this action. Both Desiree and St. Paul are liable for any amounts finally determined to be due. *See* 19 C.F.R. § 113.3. Desiree has not contested or objected to the liquidation in any way, nor appeared in this action.

There are two ways an importer or surety may contest a liquidation entered by Customs. The first is to file an administrative protest under section 514 of the Act, 19 U.S.C. § 1514. The second, which St. Paul pursued, is provided for in section 520: the importer or its surety may request reliquidation to correct "a clerical error, mistake of fact, or other inadvertence not amount-

1. Treasury Department regulations define "liquidation" as "the final computation or as-

certainment of the duties or drawback accruing on an entry." 19 C.F.R. § 159.1.

ing to an error in the construction of a law . . . when the error, mistake, or inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation . . .." 19 U.S.C. § 1520(c)(1). St. Paul, claiming a clerical error was made, filed the necessary petition to request reliquidation on May 31, 1974, well within the statutory time limit.

Thereafter, St. Paul and Customs exchanged a series of letters in which Customs said it was unable to locate the original documents relevant to St. Paul's petition and asked St. Paul to reconstruct them; St. Paul, which never had custody of the file, responded that it was unable to do so. On July 14, 1978, this exchange culminated in a letter from Customs to St. Paul which informed St. Paul that "[i]n the absence of the required documentation, this office will take no further action on your letter of protest." [2]

The matter lay dormant thereafter until the United States filed its complaint in this case in May, 1979. Plaintiff's theory, as explained in its papers supporting the motion now under consideration, is that the July 14 letter constituted a denial of St. Paul's request for reliquidation and triggered the next steps in the administrative appeal process. Specifically, section 514 of the Act provides that a refusal to reliquidate becomes "final and conclusive" unless an administrative protest is filed within ninety days. 19 U.S.C. § 1514(a)(7), (c)(2)(B). A party who files such a protest may seek review of its denial in the United States Customs Court by filing an action within 180 days of the denial. 28 U.S.C. §§ 1582(a), 2631(a). The Customs Court has exclusive jurisdiction to review denials of

protests taken under section 514. *Fritz v. United States*, 535 F.2d 1192, 1193–94 (9th Cir. 1976); 28 U.S.C. § 1582(a). The government argues that by virtue of St. Paul's failure to protest the denial of its request for reliquidation, that denial has become a final decision under section 514, St. Paul therefore has lost the opportunity to contest the liquidation further, as the Customs Court is the only forum empowered to hear its claim and that court is now closed to it.

St. Paul contends that the July 14 letter was not a denial of its request, but rather just another in a continuing series of communications from Customs about its ongoing proceeding. Thus, St. Paul argues, the request for reliquidation is still pending and this suit is premature. St. Paul asserts that if and when its request is formally rejected, it will file a protest pursuant to section 514, and if necessary will pursue its remedies in the Customs Court for resolution of its underlying dispute with Customs over the amount of duties owed by Desiree.

### Determination

The crucial question presented by this case is the legal effect to be given the letter of July 14, 1978, from Customs to St. Paul. If the government's interpretation is correct, then Customs' action on the liquidation in question has become final, and summary judgment in the government's favor is appropriate. If, however, St. Paul's version is adopted, this court's intervention, prior to completion of the administrative appeal process, would be premature and the action should be dismissed.

Neither the Act nor the customs regulations provide any guidance as to what form

---

**2.** The complete text of the letter is as follows:
This is in reply to your letter dated May 31, 1974, received by this office on June 3, 1974, wherein you protest the liquidation of the referenced entry under the provisions of Section 520(c)(1).
This office has conducted an extensive search for the entry in question but, to date, we have not been able to locate it. Two requests by this office that the entry be reconstructed have been fruitless. Investiga-

tion conducted by other Customs offices have failed to produce any information as to the location of the Customs documents or those of the broker, H. W. Robinson Air Freight Corporation, who is required to retain the documents in accordance with Part III of the Customs Regulations.
In the absence of the required documentation, this office will take no further action on your letter of protest.

a refusal to reliquidate must take,[3] and the case law is sparse. The only decision discovered that deals with a refusal to reliquidate is *Colonna & Co., Inc. v. United States*, 399 F.Supp. 1389 (Cust.Ct.1975). The plaintiff-importer in *Colonna*, pursuant to section 514 of the Act, 19 U.S.C. § 1514, had filed a protest of a liquidation action by Customs and Customs had responded with certain form letters. The question for the court was whether these letters "constituted notices of denial within the meaning of section[ ] 515(a) . . . so as to commence the running of the 180-day period of limitations within which to invoke the jurisdiction of [the Customs Court] . . .." *Id.* at 1393. The court determined the meaning of the letters "from the words used, and what the letters actually stated. . . . [and] the expressed or manifest intent of the author." *Ibid.* Applying this standard, the court held that the form letters were denials of section 520 requests for reliquidation, which had not been filed, rather than section 514 administrative protests, that Customs erroneously had treated the importer's section 514 protest as a section 520 request for reliquidation, and that the original protest thus had not been acted

upon and was still pending. The action was therefore premature and was dismissed. *Id.* at 1393–94.

*Colonna* thus provides a judicial interpretation of a valid refusal to reliquidate: the crucial letters there were the only basis for the Customs Court's holding that Customs had treated the protest there as a request for reliquidation, and accordingly are useful guides to the form a denial of such a request normally should take. The first paragraph of the *Colonna* letters, like the one in this case,[4] simply makes reference to the party's request for review. *Id.* at 1390. The second paragraph specifically states that the contested Customs decision has been reviewed and upheld, and describes the procedure for filing a section 514 protest of this action.[5] *Ibid.* In contrast, the July 14, 1978 letter to St. Paul does not claim that any review of the merits of St. Paul's claim was made, nor does it indicate that a final determination had been rendered on its request or describe available protest or appeal procedures.[6] In fact, the letter in this case that the government argues was a denial of St. Paul's request for reliquidation bears practically no substan-

---

**3.** Section 520 of the Act, 19 U.S.C. § 1520, which provides for reliquidations, simply states that "the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry . . . .." 19 U.S.C. § 1520(c). The relevant regulation describes the types of errors subject to correction by reliquidation and the time within which a request for reliquidation must be made. 19 C.F.R. § 173.4. It is silent on the process by which such a request is to be evaluated, except for stating that Customs officials "have broad responsibility and authority to review transactions to insure that the rate and amount of duty assessed on imported merchandise is correct and that the transaction is otherwise in accordance with the law." 19 C.F.R. § 173.1. No mention is made of the time frame within which or the method by which requests to reliquidate are to be resolved.

This is in stark contrast with the provisions for disposing of protests filed pursuant to section 514, 19 U.S.C. § 1514, for which specific procedures are mandated: protests are to be allowed or denied within two years of filing, 19 C.F.R. § 174.29, and a notice of any denial is to be mailed to the protesting party, 19 C.F.R. § 174.30. Further, all decisions on protest reviews are required to be published or made

available for public inspection within 120 days of issuance. 19 C.F.R. § 174.32.

**4.** *See* note 2, *supra.*

**5.** So much of the form letter of denial as is printed in the *Colonna* opinion reads as follows:

> Please be advised that we have reviewed the classification in light of your claim and adhere to our original action. However, this decision may be protested by the importer or his authorized agent within 90 days after the date of this letter by filing a protest on Customs Form 19 in quadruplicate in accordance with Section 1514(a)(7), Title 19, United States Code.

399 F.Supp. at 1390. The description of the protest procedure was what led the Customs Court to conclude that Customs had treated the importer's section 514 protest as a section 520 request for reliquidation: 19 U.S.C. § 514(a)(7), cited in the letter, refers to protests of denials of such requests, while the only recourse available after disallowance of a section 514 protest is suit in the Customs Court. *See* section 514(a), 19 U.S.C. § 1514(a).

**6.** *See* note 2, *supra.*

tive resemblance to the form letters used by Customs for that purpose in *Colonna.*

Applying the *Colonna* standard of interpretation to the July 14 letter, "the words used, and what the letter[ ] actually stated," *id.* at 1393, do not support the government's position. Nor can an "expressed or manifest intent of the author" to deny St. Paul's request, *ibid.*, be found in the letter. Absent any explicit statement of denial, the plainest interpretation of the letter is that unless and until the necessary documentation was provided, Customs would not act on St. Paul's request. This construction is particularly reasonable in light of its consistency with prior Customs actions on this case. For example, on August 11, 1975, almost three years before sending the letter now in question, Customs wrote St. Paul directing that the missing documents be submitted. The letter concluded: "If documents are not submitted within 20 days, your claim will be considered closed." Despite the fact that St. Paul provided no documents in response to this letter, the case obviously was kept open, and St. Paul thus had no reasonable basis for expecting that the July 14, 1978 letter was intended to close the case any more than had the letter of August 11, 1975.

■ Customs' use in *Colonna* of a form letter of denial suitable for the disposition of section 520 requests for reliquidation clearly indicates that Customs has available and makes use of explicit denials in cases like St. Paul's. No such explicit denial has ever been issued in this case, however. Rather, four years after St. Paul initially requested reliquidation, Customs made an ambiguous statement indicating that no further action would be taken, similar to its earlier statements to St. Paul, and made known its conclusion that this ambiguous statement constituted a denial of St. Paul's request only after the time had expired for

St. Paul to invoke administrative review procedures. The legal import of agency action must be interpreted in a practical and pragmatic manner, *see Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *National Automatic Laundry & Cleaning Council v. Shultz,* 443 F.2d 689, 701 (D.C.Cir.1971); *National Nutritional Foods Ass'n v. Califano,* 457 F.Supp. 275, 282 (S.D.N.Y.1978) (Sand, J.), *aff'd,* 603 F.2d 327 (2d Cir. 1979), and this approach compels the conclusion that Customs' letter of July 14, 1978, was legally insufficient to deny St. Paul's request for reliquidation.[7] *See IMS Ltd. v. Califano,* 453 F.Supp. 157, 159 (C.D.Cal. 1977) (informal agency letter not a final decision for purposes of judicial review); *cf. Georator Corp. v. E. E. O. C.,* 592 F.2d 765, 768 (4th Cir. 1979) (agency's denomination of an order as final insufficient to make it such); *Aquavella v. Richardson,* 437 F.2d 397, 404–05 (2d Cir. 1971) (same); *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger,* 376 F.Supp. 1099, 1118 (S.D. Fla. 1974) (same).

■ In cases where a party adversely affected by administrative action seeks judicial review, it is axiomatic that courts generally will not intervene until the administrative process has run its course and all agency remedies are exhausted. *E. g., McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947); *Sterling Drug, Inc. v. Weinberger,* 384 F.Supp. 557, 560 (S.D.N.Y.1974) (Pierce, J.), *aff'd,* 509 F.2d 1236 (2d Cir. 1975); *see also Ideal Basic Industries, Inc. v. Morton,* 542 F.2d 1364, 1370 (9th Cir. 1976) (where land patent application not yet finally rejected by agency, judicial intervention inappropriate). Judicial review generally is reserved to "specific final agen-

---

7. Even if it was is determined that the letter was technically a denial of St. Paul's request, the result here would be the same. Courts will not enforce unjust administrative orders, *Barnes Freight Line, Inc. v. I. C. C.,* 569 F.2d 912, 923 (5th Cir. 1978); *NLRB v. Rex Disposables,* 494 F.2d 588, 592 (5th Cir. 1974), and it would be patently unjust to permit Customs to make its actions final under section 514(a) of

the Act, 19 U.S.C. § 1514(a), by means of a very ambiguous statement which it neglects to clarify until the time for acting upon it has expired. *See Colonna v. United States, supra,* 399 F.Supp. at 1393; *cf. Hansen v. Harris,* 619 F.2d 942, 948–49 (2d Cir. 1980) (government estopped from enforcing procedural prerequisite to benefit where government misconduct induced noncompliance).

cy determinations on the merits." *Central Hudson Gas & Electric Corp. v. EPA*, 587 F.2d 549, 562 (2d Cir. 1978) (Feinberg, J., concurring). Although the situation presented by this case, of an agency seeking enforcement of administrative action prior to the completion of the administrative review process, is much less common, there is no reason for a different standard to prevail. In the judicial review context, the Supreme Court has said:

> Where Congress has clearly commanded that administrative judgment be taken initially or exclusively, the courts have no lawful function to anticipate the administrative decision with their own . . ..
> It would nullify the congressional objects in providing the administrative determination . . . includ[ing] securing uniformity of administrative policy and disposition, expertness of judgment, and finality in determination . . ..

*Aircraft & Diesel Equipment Corp. v. Hirsch, supra*, 331 U.S. at 767–68, 67 S.Ct. at 1501; *see Aquavella v. Richardson, supra*, 437 F.2d at 402; *Trapp v. Goetz*, 373 F.2d 380, 382 (10th Cir. 1966). These same considerations obtain when an agency prematurely seeks enforcement of its decisions.

■ Therefore, in the absence of an appropriate disposition at the agency level of St. Paul's request for reliquidation, which I find to be still pending, the court will not intervene in this matter. *See McKart v. United States, supra*, 395 U.S. at 194, 89 S.Ct. at 1662. If, after the administrative process established by the Act, 19 U.S.C. §§ 1514, 1520, has been exhausted, the government finds it necessary to seek judicial enforcement of a proper final determination, a suit such as the present one will be appropriate. Until then, however, it is premature, and the review process mandated by the Act must be allowed to run its course.

■ The only motion currently before the court is that of the government for summary judgment. However, where it is apparent from all the submissions of the parties that there "were no disputed issues of material fact and that judgment for the non-moving party would be appropriate as a matter of law," *Lowenschuss v. Kane*, 520 F.2d 255, 261 (2d Cir. 1975), a *sua sponte* award of summary judgment to a non-moving party may be proper. *Ibid.; Morrissey v. Curran*, 423 F.2d 393, 399 (2d Cir.), *cert. denied*, 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 796, 400 U.S. 826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970); *Denzer v. Purofied Down Products Corp. Profit-Sharing and Retirement Plan*, 474 F.Supp. 773, 774 (S.D. N.Y.1979) (Knapp, J.). As is apparent from the foregoing discussion, this is such a case. The fact that St. Paul specifically suggested this course in its opposition to the instant motion also obviates the possibility of prejudice to the government from such a *sua sponte* award: the government is on notice and has had ample opportunity to make its views known. *See Morrissey v. Curran, supra*, 423 F.2d at 399. In this situation, summary judgment in defendants' favor is warranted, and the complaint is dismissed without prejudice to a similar action being brought if and when Customs denies St. Paul's request for reliquidation and that denial becomes final pursuant to section 514(a) of the Act, 19 U.S.C. § 1514(a).

IT IS SO ORDERED.