**STERLING DRUG INC. et al.,**
Petitioners,

v.

**Caspar W. WEINBERGER,** Secretary of
Health, Education and Welfare, and
Alexander M. Schmidt, Commissioner
of Food and Drugs, Respondents.

Nos. 623, 624, Dockets 73-1628, 73-2481.

United States Court of Appeals,
Second Circuit.

Argued Feb. 1, 1974.

Decided May 2, 1974.

Memorandum Oct. 9, 1974.

William F. Weigel, New York City (James B. Swire, E. Carrington Boggan, Rogers, Hoge and Hills, New York City; James H. Luther, Jr., Roger M. Rodwin, of counsel), for Sterling Drug Inc.

Robert V. Allen, Dept. of Justice, Washington, D. C. (Howard S. Epstein, Asst. Chief, Consumer Affairs Section, Dept. of Justice, on the brief), for respondents.

Before MULLIGAN and WATERMAN, Circuit Judges, and BRYAN, District Judge.*

FREDERICK van PELT BRYAN, District Judge:

In these consolidated appeals, Sterling Drug Inc. and its subsidiaries Winthrop Products, Inc. and Breon Laboratories, Inc. petition to set aside two orders of the Commissioner of Food and Drugs, dated March 2, 1973 and August 7, 1973.[1] The orders, issued under the 1962 amendments to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., denied petitioners' requests for a hearing and withdrew prior approval of new drug applications for petitioners' product, Alevaire, alleging lack of substantial evidence that the drug was effective for its recommended uses.

Alevaire is an aerosol prescription drug administered to patients with chronic respiratory diseases, to aid in the evacuation of mucous from the lungs. Alevaire is a solution of 0.125% tyloxapol, 2% sodium bicarbonate, 5% glycerine, and 92.875% water. Tyloxapol is described as the "active" muco-evacuant agent, while glycerine is a "stabilizer" and sodium bicarbonate acts to adjust the "pH factor" (alkalinity and acidity) in the lungs.

## I.

### Proceedings Before the FDA

Under the Federal Food, Drug and Cosmetic Act of 1938, no drug may be introduced into interstate commerce unless a New Drug Application (NDA), filed with the Food and Drug Administration (FDA), is in effect. The Act established procedures under which, after notice and hearing, the FDA could refuse to permit an NDA to go into effect or withdraw prior approval on the basis of evidence that the drug was unsafe for its intended use.

In 1962, the 1938 Act was amended to provide that the FDA could disapprove or withdraw prior approval of NDA's, not only on evidence that the drug was unsafe for intended use but also if substantial evidence is lacking that the drug is effective for its intended use. Substantially the same requirements for notice and hearing are provided.

Pursuant to the Act, as amended, the FDA undertook the review of marketed drugs, including those for which NDA's were in effect, for their therapeutic effectiveness. To aid it in this task, the FDA retained the National Academy of Sciences-National Research Council

---

* Frederick van Pelt Bryan, of the Southern District of New York, sitting by designation.

1. The appeals are taken pursuant to 21 U.S. C. § 355(h).

(NAS–NRC) to review the effectiveness for intended use of each approved drug.

NDA's for Alevaire had been approved by the FDA in 1952, when only the safety factor was controlling. On July 17, 1968 the FDA notified petitioners that the NAS–NRC had reported that it rated Alevaire as "ineffective" and that the FDA concurred in that conclusion.[2] Petitioners were advised that the FDA intended to institute proceedings to withdraw the approval previously given to petitioners' NDA's for Alevaire.

Pursuant to 21 U.S.C. § 355(e),[3] formal "Notice of Opportunity for Hearing" was given to petitioners on December 1, 1969. The notice, after reference to the NAS–NRC report, advised petitioners that the FDA proposed to issue an order withdrawing approval of the NDA's for Alevaire "on the grounds that there is a lack of substantial evidence that Alevaire has the effect which it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling thereof." It further advised petitioners of their right to avail themselves of an opportunity for a hearing and to submit clinical and investigational data to show they were entitled to a hearing.

 Under the FDA regulations, 21 C.F.R. 130.14(b),[4] a hearing can be denied only if the petitioners fail to submit at least some evidence of the drug's effectiveness stemming from adequate and well-controlled clinical investiga-

---

2. The NAS–NRC report stated that, "The clinical impression of the Panel is that this product is no more effective than water."

 The FDA's notification included the following: "The Academy [the NAS–NRC] reports that . . . [Alevaire is] ineffective in that there is no evidence that tyloxapol . . . has any effect on secretions in the lung other than that of water in thinning secretions by simple dilution." There was no question raised as to the safety of Alevaire nor has there been at any time; only the effectiveness of the drug for intended use has been questioned.

3. 21 U.S.C. § 355(e) provides, in relevant part:

 The Secretary shall, after due notice and opportunity for hearing to the applicant, withdraw approval of an application with respect to any drug under this section if the Secretary finds . . .

 (3) on the basis of new information before him with respect to such drug, evaluated together with the evidence available to him when the application was approved, that there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling thereof.

 The authority in the Secretary (of Health, Education and Welfare) has been duly delegated to the Commissioner of Food and Drugs. 21 C.F.R. 2.120.

4. 21 C.F.R. 130.14(b) provides:

 "If the applicant elects to avail himself of the opportunity for a hearing he is required to file a written appearance requesting the hearing within 30 days after the publication of the notice and giving the reason why the application should not be refused or should not be withdrawn, together with a well-organized and full-factual analysis of the clinical and other investigational data he is prepared to prove in support of his opposition to the notice of opportunity for a hearing. A request for a hearing may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine and substantial issue of fact that requires a hearing. When it clearly appears from the data in the application and from the reasons and factual analysis in the request for the hearing that there is no genuine and substantial issue of fact which precludes the refusal to approve the application or the withdrawal of approval of the application, e. g., no adequate and well-controlled clinical investigations to support the claims of effectiveness have been identified, the Commissioner will enter an order on this data, making findings and conclusions on such data. If a hearing is requested and is justified by the applicant's response to the notice of a hearing, the issues will be defined, a hearing examiner will be named, and he shall issue a written notice of the time and place at which the hearing will commence, not more than 90 days after the expiration of such 30 days unless the hearing examiner and the applicant otherwise agree in the case of denial of approval, and as soon as practicable in the case of withdrawal of approval."

tions, 21 C.F.R. 130.12(a)(5)(ii).[5] Petitioners duly submitted a written appearance requesting a hearing pursuant to 21 C.F.R. 130.14(b) together with a mass of evidence in support of the effectiveness of Alevaire. Petitioners' submissions as to the effectiveness of Alevaire, in addition to contentions that the NAS–NRC report was mistaken in major respects, relied principally on two clinical studies made by physicians whose qualifications in this field were never questioned. These studies were primarily directed at the basic criticism in the NAS–NRC report that "This product is no more effective than water". The first clinical study, by Doctors Miller and Paez (the Miller-Paez Study) concluded that Alevaire was effective as a muco-evacuant and superior to both water and saline. The other, by Dr. Cohen (the Cohen Study) compared Alevaire with water and concluded that Alevaire was a superior and effective muco-evacuant.

These studies were supported by affidavits from 10 physicians, knowledgeable and experienced in the field, that the Miller-Paez and Cohen Studies were "adequate and well-controlled" within the FDA requirements and established the effectiveness of Alevaire as a muco-evacuant.

In addition, petitioners submitted affidavits from six physicians based on their own extensive clinical experience with Alevaire to the effect that the drug was effective, and more effective than the commonly used agents of water and saline, and summaries of some 150 articles in medical and scientific literature commenting favorably on Alevaire and its use as a muco-evacuant.

On August 27, 1971, the FDA issued an order denying the petitioners' request for a hearing and withdrawing approval of petitioners' NDA's for Alevaire, primarily on the ground that the Miller-Paez and Cohen clinical studies were "not adequate and well-controlled".

The petitioners thereupon filed an appeal from the order in this Court (Docket No. 71–1898) and filed their printed briefs and appendix. At that point the FDA terminated its August 27, 1971 order and moved in this Court to remand, conceding that it had failed to consider relevant material in petitioners' submissions. It agreed to reconsider petitioners' request for a hearing. The FDA's motion to remand was granted by this Court over petitioners' opposition on January 11, 1972.

A series of conferences and communications between the petitioners and the FDA ensued. On March 2, 1973, some 14 months after the petition to remand the first appeal had been granted, the FDA issued a second order again denying petitioners a hearing and withdrawing approval of the NDA's for Alevaire.

Denial of the hearing was again based upon the ground that the Miller-Paez and Cohen studies were not adequate and well-controlled under the standards of 21 C.F.R. 130.12(a)(5)(ii). For the first time, the criticism was also voiced that water was not a proper "control" with which to compare Alevaire, but that the proper "control" was Alevaire minus tyloxapol.[6]

On April 16, 1973, the petitioners requested the FDA to reconsider its March 2 order. They submitted to the FDA an extensive rebuttal of the grounds on which the order was based,[7]

---

5. 21 C.F.R. 130.12(a)(5)(ii) attempts to define "adequate and well-controlled" studies. Several criteria are enumerated in an effort to separate those studies that are scientifically acceptable from those that are not. Only studies which meet the standards particularized in this regulation are acceptable in determining whether there is substantial evidence to support the claims of effectiveness for any drug. See Weinberger v. Hynson, Westcott & Dunning, 412 U.S. 609, 617–619, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973).

6. In other words, a solution of 2% sodium bicarbonate, 5% glycerine and 93% water. The FDA had previously suggested that either water or Alevaire minus tyloxapol would be a proper "control".

7. This included material supporting the suitability of the controls used in petitioners' clinical studies under 21 C.F.R. 130.-12(a)(5)(ii)(a)(4)(iii).

which, in the light of subsequent events, was apparently well taken.

The petitioners also appealed to this Court seeking to set side the March 2, 1973 order (Docket No. 73–1628). On June 14, 1973, when its time to file the record was about to expire, the FDA terminated its March 2 order and reinstated its approval of the NDA's for Alevaire. The order of termination stated that upon reviewing the petition for reconsideration, the FDA had concluded that the requests for a hearing should be reevaluated. The FDA also moved to dismiss the pending appeal from the March 2 order. The petitioners opposed that motion, asserting they were entitled to a decision in their favor on the merits.

Then, on August 7, 1973, before the FDA's motion to dismiss the appeal from the March 2, 1973 order was argued, the FDA issued a third order denying a hearing and withdrawing approval of the petitioners' NDA's for Alevaire. This third order abandoned the grounds on which the prior two orders of March 2, 1973 and August 27, 1971 had been based. It advanced an apparently new ground for withdrawal which had never been previously raised. The ground now announced was that Alevaire was a "fixed combination" drug and that the only studies which could demonstrate its effectiveness were studies which assessed "the contribution each of the three components of Alevaire makes to the claimed effectiveness of the drug". The Miller-Paez and Cohen Studies were rejected as irrelevant to this theory.

Petitioners appealed to this Court seeking to set aside the third order of August 7, 1973 (Docket No. 73–2481). The FDA's motion to dismiss petitioners' appeal from the March 2, 1973 order was denied on November 9, 1973, and

the appeal from that order was consolidated with the appeal from the subsequent August 7, 1973 order.

## II.

### *The March 2, 1973 Order*

The appeal from the March 2, 1973 order denying a hearing and withdrawing approval of the Alevaire NDA's is in a curious posture. Subsequent to the taking of the appeal, the March 2 order was terminated by the FDA's order of June 14, 1973 which granted petitioners' application for reconsideration of their requests for a hearing and reinstated approval of the Alevaire NDA's.

The respondents' brief states: "We confessed error in that order [of March 2, 1973] before this Court on November 9, 1973 and petitioners objected. We again confess error, with the hope that petitioners will not look a gift horse in the mouth a second time."

Concededly erroneous though it was, and despite the continuing pendency of the appeal, the March 2 order is no longer in force and effect. We fail to see what relief could be granted to petitioners under these circumstances. The appeal from the March 2, 1973 order must be dismissed as moot.

## III.

### *The August 7, 1973 Order*

The questions raised on this appeal, therefore, center on the August 7, 1973 order. That order, for the first time in the lengthy and more than a little confused proceedings before the FDA characterized Alevaire as a "fixed combination drug".

The fixed combination drug classification was established on October 5, 1971 by regulation 21 C.F.R. 3.86 [8] (some

8. 21 C.F.R. 3.86 provides, in relevant part:
The Food and Drug Administration's policy in administering the new-drug, antibiotic, and other regulatory provisions of the Federal Food, Drug and Cosmetic Act

regarding fixed combination dosage form prescription drugs for humans is as follows:
(a) Two or more drugs may be combined in a single dosage form when each compo-

three years after the Alevaire proceeding had been commenced), in pursuance of a policy formulated initially by the NAS–NRC Drug Efficacy Study of 1969.

A fixed combination drug is one which combines "two or more drugs . . . in a single dosage form" intended for "concurrent therapy." The NAS–NRC study explained the reasons for the classification as follows:

> The rating "ineffective as a fixed-combination" was brought into use to deal rationally with certain combinations of drugs, notably combinations of two or more antibiotics, one or more of which when administered alone is acknowledged to be effective for the cited indication. It is a basic principle of medical practice that more than one drug should be administered for the treatment of a given condition only if the physician is persuaded that there is substantial reason to believe that each drug will make a positive contribution to the effect he seeks. Risks of adverse drug reactions should not be multiplied unless there be overriding benefit. Moreover, each drug should be given at the dose level that may be expected to make its optimal contribution to the total effect, taking into account the status of the individual patient and any synergistic or antagonistic effects that one drug may be known to have

on the safety or efficacy of the other. On these grounds, multiple therapy using fixed dose ratios determined by the manufacturer and not by the physician is, in general, poor practice.

The August 7, 1973 order withdrew approval of Alevaire upon the ground that no studies had been submitted to show that Alevaire was effective as a fixed combination drug. It rejected the Miller-Paez and Cohen Studies, about which the controversy had revolved up to that time, as irrelevant, on the ground that they did not demonstrate the effectiveness of Alevaire in terms of the claimed contribution each component made to the drug's effectiveness.[9]

Petitioners contend that they were entitled to notice of the specific grounds on which the FDA proposed to withdraw approval of the NDA's for Alevaire; that no notice was given them of the "fixed combination" grounds on which the August 7 order was based, and that they were therefore precluded from submitting evidence of the drug's effectiveness which would meet the criticisms expressed, for the first time, in that order. Thus, they urge, they were denied the opportunity to show that they were entitled to a hearing under the procedure provided by the statute and the FDA's own regulations.

The statute, 21 U.S.C. § 355(e), provides that "after due notice and opportunity for hearing" approval of an NDA

---

nent makes a contribution to the claimed effects and the dosage of each component (amount, frequency, duration) is such that the combination is safe and effective for a significant patient population requiring such concurrent therapy as defined in the labeling for the drug.

9. The August, 1973 order stated, in relevant part:

In the petition for reconsideration filed by the NDA holders following publication of the March 8, 1973 notice, the NDA holders took issue with every facet of the evaluations of the Miller-Paez and Cohen studies contained in that notice.

The Commissioner finds that certain criticisms delineated in the petition are well-founded when the investigations are ac-

cepted at face value as is required in ruling upon the adequacy of a request for hearing under 21 C.F.R. 130.12(a)(5) and 130.14. However, the Commission also finds that another analysis of these two studies, which would take into account the several valid objections made in the petition for reconsideration, would be a meaningless and unnecessary endeavor. Even assuming that the studies are adequate and well-controlled investigations comparing Alevaire with other control substances, a conclusion not warranted by analysis of the investigations, the studies cannot demonstrate the effectiveness of Alevaire because their design precludes assessments respecting the contribution each of the three components of Alevaire makes to the claimed effectiveness of the drug.

may be withdrawn "on the basis of new information before [the FDA] with respect to such drug, evaluated together with the evidence available . . . when the application was approved, that there is a lack of substantial evidence that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling thereof." [10]

The regulation, 21 C.F.R. 130.14(a), spells out the due notice requirement as follows: "The notice to the applicant of opportunity for a hearing on a proposal by the Commissioner . . . to withdraw the approval of an application will specify the grounds upon which he proposes to issue his order."

On June 18, 1973, between the FDA termination of its March 2, 1973 order on June 14, 1973 and the issuance of its August 7, 1973 order, the Supreme Court decided Weinberger v. Hynson, Westcott & Dunning, 412 U.S. 609, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973). In that case the Supreme Court held that 21 U.S.C. § 355(e) and 21 C.F.R. 130.14 set up a type of summary judgment procedure in FDA administrative proceedings for the denial of NDA approval or withdrawal of such approval.

> What the agency has said, then, is that it will not provide a formal hearing where it is apparent at the threshold that the applicant has not tendered any evidence which on its face meets the statutory standards as particularized by the regulations. 412 U.S. at 620.

■ Thus, the FDA may withdraw a drug from the market without a hearing when, and only when, "it appears conclusively from the applicant's 'pleadings' that the application cannot succeed." *Id.* at 621.

Prior to the issuance of the August 7 order, the petitioners had submitted extensive evidence of Alevaire's effectiveness as a muco-evacuant to rebut the contention in the FDA notice that Alevaire was no more effective than water. Faced with the question of whether petitioners were entitled to a hearing on that issue under the *Weinberger* standards, the FDA then shifted its grounds to the new fixed combination theory in its August 7 order. That order was predicated on the Notice of Opportunity for Hearing of December 1, 1969 which was the only notice ever given to petitioners. The notice, in turn, was based on the FDA announcement of July 9, 1968 stating that the FDA concurred in the report of the NAS–NRC drug efficacy study group that Alevaire was ineffective because it was "no more effective than water". While some general language was used, this was the only specific ground stated on which the FDA proposed to withdraw approval of the NDA's for the drug. It was to this ground that the Miller-Paez and Cohen Studies and the other material submitted by the petitioners were directed.[11]

Until August, 1973, the FDA apparently agreed that this was the issue before it. The objection to petitioners' submission raised by the FDA was that the studies were not "adequate and well-controlled". Both of the prior withdrawal orders, of August 27, 1971 and March 2, 1973, which the FDA itself terminated after they had been appealed from, were predicated on that ground.

■ The August 7, 1973 order was the first time the fixed combination theory had been injected into the proceedings. There was no mention of that theory as a ground for proposed withdrawal in the Notice of Opportunity for Hearing of December 1, 1969. Petitioners were never given a meaningful opportunity to submit studies or data to contravene that theory. Instead, they were arbitrarily denied the opportunity

---

10. See Note 3, *supra.*

11. It should be noted here that the Commissioner was aware as early as August of 1968

that petitioners' studies would compare Alevaire with water, and those studies were submitted by June of 1970.

to which they were entitled to establish their right to a hearing on that ground.[12]

The FDA argues that even if its notice to petitioners failed to specify the fixed combination theory as a ground for proposed withdrawal, nevertheless, the petitioners should somehow have inferred this and submitted evidence rebutting that theory. The FDA refers to various isolated excerpts from the record, such as general references to the labeling of Alevaire, in the December 1, 1969 Notice of Opportunity for Hearing, and the reference in its order of March 2, 1973 (which order it conceded was erroneous and withdrew) to a lack of tests comparing Alevaire to Alevaire minus its therapeutic agent tyloxapol.

In the light of this lengthy and confused record, this argument is wholly unpersuasive. What the argument amounts to is this—the petitioners should somehow have guessed whatever grounds for withdrawal the FDA might eventually come up with and therefore specification of the grounds for the proposed withdrawal required by the statute and regulation was unnecessary.

 The petitioners were not required to indulge in such guesswork. They were entitled to notice of the specific grounds on which the FDA proposed to withdraw approval of the Alevaire NDA's and to an opportunity to submit evidence which would entitle them to a hearing before an order of withdrawal could be validly issued. The

order of August 7, 1973 denied a hearing and withdrew approval of Alevaire without such notice to petitioners and without giving them an opportunity for such submission.[13] Viewed in the light of the extended prior proceedings and the two prior orders of withdrawal without a hearing on quite different grounds, terminated by the FDA only after petitioners had appealed to this Court, it is apparent that the FDA arbitrarily disregarded the requirements of the statute and its own regulations. The order of August 7, 1973 is invalid and must be set aside and the original approval of the NDA's for Alevaire reinstated.[14]

A similar result was reached by the District of Columbia Circuit in Hess & Clark v. Food and Drug Administration, 495 F.2d 975 (D.C.Cir.1974.)

Hess & Clark involved the procedures for withdrawal of approval of New Animal Drug Applications (NADA's) under 21 U.S.C. § 360(b) and (e) and 21 C.F.R. 135.15 which parallel the provisions of 21 U.S.C. § 355(e) and 21 C.F.R. § 130.14, applicable in the case at bar. On June 21, 1972 the FDA issued a Notice of Opportunity for Hearing specifying certain tests as the grounds for proposed FDA withdrawal of NADA's for the drug diethylstilbestrol (DES) when used in the form of implanted pellets. The applicants requested a hearing and submitted evidence directed to the grounds specified in the notice. On June 27, 1973, without further notice,

12. Withdrawal of NDA approval on the fixed combination theory has been upheld in several cases. However, in each of these cases petitioners were given notice of that theory and the opportunity to submit evidence to rebut it. Pfizer, Inc. v. Richardson, 434 F. 2d 536 (2d Cir. 1970) ; Upjohn Co. v. Finch, 422 F.2d 944 (6th Cir. 1970) ; American Cyanimid Co. v. Richardson, 456 F.2d 509 (1st Cir. 1971). These cases serve to emphasize the importance of the notice requirement.

13. As Mr. Justice Powell said in his concurrence in Weinberger v. Hynson, Westcott & Dunning, supra:

The public interest is twofold : (i) to remove from the market, in accordance with due process, drugs of no utility or effec-

tiveness; and (ii) to retain on the market those drugs that are efficacious. In an understandable zeal to remove the former, an administrative agency must not overlook both the interest of the public and the right of the proprietor in protecting the drugs that are useful in the prevention, control or treatment of illness. 412 U.S. at 639, n. 2.

14. Petitioners claim that, despite the prior reinstatements of the NDA's for Alevaire, the drug has remained on an FDA "ineffective list" throughout the course of these lengthy proceedings. If this be so, we think that the present reinstatement should have the effect of removing Alevaire from such an ineffective list, as well.

the FDA issued an order denying a hearing and withdrawing approval of the NADA's for DES when so used. The order was based on a new test which first came to light in April, 1973 and was quite different from the tests which had been specified as the basis for proposed withdrawal in the Notice of Opportunity for Hearing. The applicants appealed from that order. The court pointed out:

> [W]here the case is governed by a statutory requirement for hearing (there being no imminent hazard to health), that hearing is not to be denied in the absence of a fair opportunity to identify material issues that require a hearing, an opportunity that embraces a suitable notice of the basis on which the agency proposes to act summarily.

It held that the FDA had not given to the DES applicant notice specifying the nature of the facts and evidence on which it proposed to withdraw NADA approval, as required by the FDA summary judgment procedures; that the applicant had thereby been deprived of the opportunity to controvert the alleged facts and present material issues which would entitle it to a hearing; and that therefore the order withdrawing approval of the NADA's for DES without a hearing was invalid. The order of withdrawal was set aside and the NADA approval which the order had attempted to withdraw was reinstated.[15]

In the case at bar, the August 7, 1973 order withdrawing approval of Alevaire without a hearing likewise is fatally defective.

## IV.

### *The Adequacy of the Fixed-Combination Ground*

Petitioners also contend that the record demonstrates that Alevaire is not a "fixed combination" drug and therefore not subject to the rating "ineffec-

tive as a fixed combination" applied to it by the order of August 7, 1973. Petitioners urge that this Court so hold.

While there is little in the record now before us to support the proposition that Alevaire is a fixed combination drug within the meaning of 21 C.F.R. 3.86, it is not for this Court to pass on the question on this appeal. If the FDA proposes to withdraw approval of the NDA's for Alevaire on the ground that it is ineffective as a fixed combination drug, it must follow the procedure required by the statute and regulations. It must give the petitioners notice of the specific grounds proposed for withdrawal, an opportunity to present evidence showing that they are entitled to a hearing, and a hearing if that is shown to be required. The FDA may then determine the question on a full and proper record, subject, of course, to petitioners' right of appeal to this Court from an adverse determination.

The order of August 7, 1973 is set aside and the prior approval of the New Drug Applications for Alevaire by the FDA is reinstated. The appeal from the order of March 2, 1973 is dismissed as moot.

## MOTION TO PUBLISH NOTICE OF REINSTATEMENT OF NEW DRUG APPLICATIONS

PER CURIAM:

Petitioners have moved for an order directing respondents (1) to publish notice of reinstatement of approval of the New Drug Applications for Alevaire in the Federal Register and (2) to remove a listing of Alevaire as "ineffective" from the "FDA Interim Index To Evaluations Published In The Federal Register For NAS–NRC Reviewed Drugs."

██ Since the motion was made, the FDA has issued and published in the Federal Register a new "Notice of Opportunity for Hearing" on a proposal

---

15. Cooper Laboratories, Inc. v. Commissioner, Federal Food & Drug Administration 501

F.2d 772 (D.C.Cir. April 19, 1974) is not germane to the notice issue presented here.

withdrawing approval of New Drug Applications for Alevaire, as it was permitted to do by our decision of May 2, 1974. The notice makes specific reference to that decision. The first branch of petitioners' motion is denied.

■ The nature of the FDA Interim Index and the basis on which listings thereon are made were not before us and were not explored on the appeal. We did not pass on the propriety of the listing of Alevaire on that Index, either in footnote 14 of the opinion or otherwise. The second branch of petitioner's motion is denied without prejudice to such other remedies as may be available to the petitioners.