STERLING DRUG, INC., et al.,
Plaintiffs,

v.

Caspar W. WEINBERGER, Secretary of Health, Education and Welfare and Alexander M. Schmidt, Commissioner of Food and Drugs, Defendants.

No. 74 Civ. 4282.

United States District Court,
S. D. New York.

Oct. 31, 1974.

See also 2 Cir., 503 F.2d 675.

Rogers, Hoge & Hills, by William F. Weigel, James B. Swire, E. Carrington Boggan, Roger M. Rodwin, New York City, for plaintiffs.

Paul J. Curran, U. S. Atty., S. D. New York by Jerry Siegel, Asst. U. S. Atty., Gen. Counsel, Dept. of Health, Education and Welfare, by Jeffrey B. Springer, Sp. Asst. to the Gen. Counsel, Rockville, Md., for defendants.

## MEMORANDUM OPINION

PIERCE, District Judge.

The plaintiffs herein, manufacturers and distributors of the prescription drug Alevaire, seek to enjoin the defendants from proceeding to withdraw approval of the New Drug Applications (NDA's) now in effect for Alevaire. Oral argument was heard on this matter on October 10, 1974 at which time the application was consolidated with trial on the merits pursuant to Rule 65 of the Fed. R.Civ.P.

Plaintiffs Sterling Drug, Inc. and Winthrop Products, Inc., a subsidiary of Sterling, are Delaware corporations and the holders of the NDA's. Plaintiff Breon Laboratories, Inc., also a subsidiary of Sterling, is a New York corporation responsible for the marketing of the drug in the United States. Defendants Weinberger and Schmidt are the Secretary of Health, Education and Welfare and the Commissioner of the Food and Drugs Administration (FDA), respectively.

The general background of this litigation is not in dispute. Alevaire is an aerosol prescription drug composed of 0.125% tyloxapol, 2% sodium bicarbonate, 5% glycerine and 92.875% water. It is administered to patients with obstructive lung conditions to aid in the evacuation of broncho-pulmonary secretions. It appears that NDA's for Alevaire were approved by the FDA in 1952. At that time under the controlling statute, that is, the Federal Food, Drug and Cosmetic Act of 1938, 21 U.S. C. § 301 et seq., only the safety factor was considered. In 1962 the Act was amended to allow the FDA to remove from the market drugs with approved NDA's if substantial evidence was lacking that the drug was effective for its intended use. To comply with this legislative mandate, the FDA retained the National Academy of Sciences–National Research Council (NAS–NRC) to review the effectiveness of each drug which had been approved up until then. Such a study was undertaken of Alevaire and the NAS–NRC concluded that the drug was ineffective for its intended use. By notice published in the Federal Register of July 17, 1968 (33 Fed.Reg. 10227) the FDA announced that it concurred with this evaluation.

Pursuant to 21 U.S.C. § 355(e) the FDA published on December 6, 1969 a "Notice of Opportunity for Hearing" in the Federal Register indicating its intention to withdraw its approval of the drug. Apparently it based its conclusion that the drug was ineffective primarily on the criticism of the NAS–NRC that Alevaire was no more effective than water. To refute this finding and to support their request for a hearing[1] the plaintiffs submitted two studies—the Miller-Paez Study and the Cohen Study. The former study compared the drug with water and saline and the latter compared it with water alone. Both studies concluded that Alevaire was an effective muco-evacuant.

On August 27, 1971 the FDA found that these studies were not "adequate

---

1. 21 C.F.R. § 130.14(b) (1973) provides, inter alia, that a request for a hearing must be accompanied by "a well-organized and full factual analysis of the clinical and other investigational data" the applicant is prepared to prove at such a hearing. The request "must set forth specific facts showing that there is a genuine and substantial issue of fact that requires a hearing. When it clearly appears from the data in the application and from the reasons and factual analysis in the request for the hearing that there is no genuine and substantial issue of fact . . ., e. g., no adequate and well-controlled clinical investigations to support the claims of effectiveness," the Commissioner may deny a hearing and enter an order withdrawing the application based solely on these data.

and well controlled" within the meaning of 21 C.F.R. § 130.12(a)(5)(ii) (1973) and accordingly denied the request for a hearing. Simultaneously the FDA withdrew its approval of the drug. Thereafter the plaintiffs appealed to the court of appeals pursuant to 21 U.S.C. § 355(h). While the appeal was pending in the Second Circuit, the FDA terminated its August 27 order and moved in the court of appeals to remand the case to the FDA for further administrative action. The motion to remand was granted on January 11, 1972.

On March 2, 1973 the FDA issued a second order again denying the request for a hearing and withdrawing approval of the drug on the ground that the Miller-Paez and Cohen Studies were not "adequate and well-controlled". This time, however, the FDA indicated that water was not the proper "control" with which to compare the effectiveness of Alevaire. Instead, the proper "control" was said to be Alevaire minus tyloxapol, that is, Alevaire's vehicle solution of 2% sodium bicarbonate, 5% glycerine and 93% water.[2]

The plaintiffs then petitioned the FDA to reconsider its March 2 order and also appealed to the Second Circuit seeking to have the order set aside. On June 14, 1973 the FDA terminated the March 2 order and reinstated approval of the NDA's for Alevaire. It also moved to dismiss the appeal from the March 2 order.

While a decision on its motion before the court of appeals was pending the FDA on August 7, 1973 again issued another order denying the petition for a hearing and again withdrawing approval of the drug. However, this time the FDA claimed that Alevaire was a "fixed-combination" drug within the meaning of 21 C.F.R. § 3.86 (1974). Accordingly, the FDA maintained that, in order to support the effectiveness of the drug, studies had to be made assessing the contribution each of the three

components of Alevaire made to the claimed effectiveness of the drug. Since the Miller-Paez and Cohen Studies were not addressed to this theory, they were rejected as irrelevant. The plaintiffs again appealed to the Second Circuit seeking to set aside the August 7 order.

The appeals from the March 2 and August 7 orders were consolidated (after the FDA's motion to dismiss the appeal from the March 2 order had been denied) and on May 2, 1974 the Second Circuit rendered its decision. It dismissed the appeal from the March 2 order as moot and it set aside the August 7 order because the plaintiffs had not been initially notified of the grounds on which the approval of the NDA's was ultimately withdrawn by that order. Accordingly, the Court reinstated approval of Alevaire.

On August 13, 1974 the FDA published in the Federal Register a new "Notice of Opportunity for a Hearing" indicating its intention to withdraw approval of the drug on two alternative theories: (1) treating Alevaire as a single entity drug the FDA maintained that it had to be compared with its own vehicle, that is, Alevaire minus tyloxapol; (2) treating Alevaire as a fixed combination drug, the FDA contended that Alevaire's effectiveness had to be tested by comparing the effectiveness of each of its components. The plaintiffs were given until September 12, 1974 to file a notice of appearance and request for a hearing and until October 14, 1974 to furnish the FDA with the necessary information supporting the request for a hearing. On August 15, 1974 the plaintiffs sought to have their time extended but this request was denied. On September 10, 1974 the plaintiffs requested a hearing on this matter; however the data to support this request has not yet been provided to FDA.[3]

On September 30, 1974 plaintiffs filed the complaint herein and the application for a preliminary injunction was

---

2. Prior to this time the FDA had indicated that either water or Alevaire minus tyloxapol would be a proper "control".

3. By stipulation it was agreed that plaintiffs would have 15 days from the filing of this decision to submit to the FDA the necessary data in support of the request for a hearing.

**560**

brought on by an order to show cause dated October 1, 1974. As noted the application was consolidated with trial on the merits and oral argument was held on October 10, 1974. The parties incorporated all the documents submitted to the Court as part of the record in the case.

The plaintiffs attack the legality of the administrative proceedings on two main grounds. First, they allege that the defendants are barred by the doctrines of res judicata or collateral estoppel from maintaining that the effectiveness of Alevaire can only be demonstrated by comparing it to its vehicle. In their view, the May 2, 1974 Second Circuit decision rejected the validity of this contention and accordingly the defendants may not again proceed against plaintiffs on the basis that the proper "control" with which to compare Alevaire is Alevaire minus tyloxapol. Alternatively, the plaintiffs claim that the defendants may not now proceed on this theory since they explicitly abandoned it in briefs submitted to and oral argument before the Second Circuit. Secondly, the plaintiffs argue that the defendants may not treat Alevaire as a fixed combination drug since it lacks the "new information" required by 21 U.S.C. § 355(e)(3).

The Court has concluded that it need not reach the merits of the plaintiffs' arguments since in its view the complaint herein must be dismissed for failure to exhaust administrative remedies.

Subject to certain exceptions it is settled that a federal district court may not review interlocutory administrative decisions. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). In this case the proposed withdrawal of approval for the NDA's is admittedly not a final order and hence not ordinarily reviewable in the district court. In fact any review of FDA action concerning withdrawal of an NDA normally is to be made by the court of appeals pursuant to 21 U.S.C. 355(h). As another court has stated: "[W]here Congress has provided an adequate procedure for judicial review of administrative action, that procedure must be followed. Only in extraordinary cases will parties be allowed to deviate from this statutory course and seek injunctive relief from the district court, short-circuiting the administrative procedures." Coca-Cola Co. v. FTC, 342 F.Supp. 670, 675 (N.D.Ga. 1972), aff'd, 475 F.2d 299 (5th Cir.), cert. denied, 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973).

The plaintiffs have argued that the exhaustion doctrine is inapplicable here because "[b]oth by attempting to relitigate previously decided matters and in proceeding without the requisite statutory base [that is, without the required "new information"], defendants are proceeding in violation of law." Reply Memorandum at 10. In this Court's view this argument is not well taken since its adoption would undercut the very rationale of the exhaustion doctrine. Perforce the claim in every suit of this type is that the administrative agency is acting illegally. If a court without more were to rule on the merits of each such claim this would undermine basic administrative law procedures and thereby promote the very piecemeal litigation which the doctrine in part aims to discourage.

Admittedly the plaintiffs are not foreclosed from raising their res judicata defense on an appeal from whatever adverse final determination the agency may make. Faced with this the plaintiffs contend that it would be a "total perversion" of the doctrines of res judicata and collateral estoppel to compel them "to relitigate previously decided matters and then argue res judicata on appeal only." Reply Memorandum at 10. However, both reason and authority, in this Court's judgment, are contrary to the plaintiffs' position.

In an analogous situation, a denial of a motion to dismiss a complaint on the ground of res judicata has been held not to be immediately appealable.

Petro v. Bakely, 353 F.2d 511 (3d Cir. 1965). Such a result is not at all viewed as a "total perversion" of the doctrine. Similarly, here, had plaintiffs first presented the res judicata argument before the FDA and had it been rejected there, this Court does not believe that plaintiffs could have then immediately appealed this determination to the court of appeals. They should not be permitted to avoid this result simply by sidestepping agency consideration and raising their defense directly before a district court. Instead, the proper procedure is for the plaintiffs to raise this defense in the administrative proceedings and then have the agency determination on this issue (should it be contrary to plaintiffs' claim) reviewed on the appeal to the court of appeals from whatever adverse final decision the FDA may make with respect to the withdrawal proceedings.

The Court is not insensitive to the real possibility that this procedure may compel the plaintiffs to expend additional time, money and effort in further contesting the withdrawal proposal. Nevertheless, the Court feels that such a possibility is an insufficient basis for allowing the plaintiffs to circumvent the proper administrative channels. See Allegheny Airlines, Inc. v. Fowler, 261 F. Supp. 508, 520 (S.D.N.Y.1966).

■ Moreover, the Supreme Court has required exhaustion of administrative remedies in spite of a claim that a proposed administrative investigation was barred by res judicata. SEC v. Otis & Co., 338 U.S. 843, 70 S.Ct. 89, 94 L.Ed. 516 (1949) (per curiam), rev'g, Otis & Co. v. SEC, 85 U.S.App.D.C. 122, 176 F.2d 34 (1949). *Otis & Co.* stands for the proposition that a claim of res judicata is insufficient to support an injunction of proposed administrative action. See Coca-Cola Co. v. FTC, 475 F. 2d 299, 304 (5th Cir.), cert. denied, 414 U.S. 877, 94 S.Ct. 121, 38 L.Ed.2d 122 (1973). Accordingly, plaintiffs' res judicata defense must first be disposed of through administrative channels.

As noted above as a second ground for their application plaintiffs argue that the agency is proceeding without "new information" as required by 21 U.S.C. § 355(e)(3). This statute requires that the Secretary[4] withdraw approval of any application if he finds "on the basis of new information before him with respect to such drug, evaluated together with the evidence available to him when the application was approved, that there is a lack of substantial evidence" of effectiveness. In the plaintiffs' view, the agency does not have any such "new information" to support its conclusion that Alevaire may be treated as a fixed-combination drug.

■ Whether the agency does in fact possess "new information" to support its conclusion is a factual determination which should first be made by the FDA. Contrary to plaintiffs' argument this issue does not present a straightforward question of statutory construction as in Jewel Companies, Inc. v. FTC, 432 F.2d 1155 (7th Cir. 1970). It is incontrovertible that the FDA has before it reports and other data dealing with the effectiveness of Alevaire. Whether an assessment of this data will justify treatment of the drug as a fixed-combination drug is a question which should first be decided by the FDA. Only after this determination is made and it then becomes clear on what specific information the agency has relied for its conclusion can a Court determine whether the data used constitutes "new information" within the meaning of the statute. It may well be, as the Second Circuit observed, that there may be "little in the record . . . to support the proposition that Alevaire is a fixed combination drug." Sterling Drug, Inc. et al. v. Weinberger et al., 503 F.2d 675 (2d Cir. 1974). Nevertheless, the FDA should first be given the opportunity to decide the question "on a full and proper rec-

---

4. The Secretary of Health, Education and Welware has delegated his responsibilities under the Federal Food, Drug and Cosmetic Act to the Commissioner of Food and Drugs. 21 C.F.R. § 2.120 (1974).

ord". *Id.* Plaintiffs, of course, have the right to appeal to the court of appeals from an adverse determination.[5]

The plaintiffs' application for an injunction is denied and the complaint is dismissed.[6]

The foregoing shall constitute this Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Fed.R.Civ.P.

Submit order on two days notice.

So ordered.

---

5. In this connection the Court finds somewhat puzzling the plaintiffs' contention that on appeal the issue of whether the agency has "new information" to support its conclusion would be lost. They premise this argument on the assertion that if they are forced through a hearing the agency can somehow "create" this new information "after the fact". The Court fails to see how the agency can manufacture information which it simply does not have.

6. Cases cited by the plaintiffs in support of their position that exhaustion is not required have been examined by this Court and found to be distinguishable. Thus, in Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), the agency action clearly and admittedly violated express statutory standards. In Elmo Division of Drive-X Co. v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965), the Court found that relief in the district court was the only effective remedy. These situations do not exist here. Finally, Fay v. Douds, 173 F.2d 720 (2d Cir. 1949), is also inapposite. There a strong showing was made that the agency action violated the constitutional rights of the plaintiff. See Pepsico, Inc. v. FTC, 343 F.Supp. 396, 399 (S.D.N.Y.), aff'd, 472 F.2d 179 (2d Cir. 1972), cert. denied, 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973). Such is not the case here.